JOHN W. McGILL, APPELLANT, vs. MARY J. McGILL, APPELLEE.

1. At the common law neither husband nor wife could be witnesses for or against each other, and this exclusion was not solely on the ground of pecuniary or property interest, but upon grounds of public policy for the protection of the marriage relation. The statutes of this State have not removed this incompetency, and in a proceeding for a divorce neither the husband nor wife is a competent witness.

2. "Habitual intemperance" as a ground for divorce under the statute is a persistent habit of becoming intoxicated from the use of strong drinks. The offence is the *habit*, and frequent recurring drunkenness from such use proves it.

3. When the bonds of matrimony are dissolved the parties should be placed by the decree of the court as near as may be in the situation they occupied before marriage. In respect to the separate property of the wife, his estate therein is extinguished by the divorce, and a decree may be made that such property in the possession of the husband, by virtue of the marital relation, be surrendered to her.

4. Upon granting a decree of divorce a clause directing that the rents, hire, issues, proceeds or profits of the real property of the wife which was in the care and management of the husband, by virtue of the marriage, and which rents, &c., accrued during the coverture, cannot be sustained, the statute providing that she cannot recover them from him.

5. In granting a decree of divorce the Court of Chancery exercises a discretion in awarding the custody of minor children, having a regard to the condition and fitness of the parents and the interests of the children, the power being reserved to alter or modify the decree in this respect.

6. When a final decree of divorce is sustained upon appeal, an interlocutory order made on filing the bill, restraining the defendant from interfering with or molesting the complainant and his family during the pendency of the suit, and in nowise affecting the decree, which order is alleged to be irregular, will not be reviewed. If such order was irregularly made the final decree will not be reversed for that reason.

7. Under the statutes regulating appeals in causes an appeal "taken within the time fixed by law in other cases," and giving bond to pay the debt, damages or condemnation and costs, approved by the Judge or Clerk, does not operate as a *supersedeas* except to a decree where the amount of the "debt, damages or condemnation" is mentioned in the decree. In other cases the *supersedeas* must be allowed by the Judge of the Circuit Court or a Justice of the Appellate Court.

8. A husband cannot be compelled to account to the wife, in any suit, for the rents and profits of her separate statutory property received by him during coverture.

Appeals from the Circuit Court for Gadsden county.
The facts of the case are stated in the opinion.

*John W. Malone* for Appellant.

*Stephens & Love* for Appellee.

FIRST APPEAL.

THE CHIEF-JUSTICE delivered the opinion of the court.

This is a bill for a divorce from the bonds of matrimony filed by Mary J. McGill (by her next friend) against appellant, upon the ground that he is and has for a long time been habitually intemperate, and that on account thereof and the conduct of the appellant her life is rendered miserable, her domestic happiness has been destroyed, that it is unsafe for herself and her family to be subjected to his control on account of his violent actions toward them when intoxicated. They were married in February, 1873, in Georgia, and came to her plantation in Gadsden county, Fla., in March, 1876, where they have since resided. Before their marriage she was possessed of real and personal property, and by an ante-nuptial agreement all the real and personal property of every description which she then had or might subsequently acquire should remain her separate property and subject to her testamentary disposition, but to be used by him during the coverture for the mutual benefit of both and of any children that might be born to them. He has had possession of her lands since they came to Florida according to the terms of the agreement. In January, 1880, she left the plantation where they had resided and removed with one child born of said marriage and others of her children by a former marriage to a house in Quincy, in Gadsden county, leaving her husband upon her plantation. She alleges that her purpose in leaving the plantation in the country and going to Quincy was to obtain the benefit of schools, &c., for her family, and to escape with herself and family from the power and influence of appellant, which had become unbearable by reason of his persistent habit of intemperance and his violence when intoxicated.

She therefore prays a divorce from the bonds of matrimony ; that appellant be enjoined from removing their child from her custody, or in any manner interfering with her or her children, or from entering upon the premises occupied by her against her consent, from disposing of the products of the plantation, or the crops thereon until the further order of the court ; that all the real and personal property contemplated in the ante-nuptial contract be returned and restored to her, and for other relief.

The answer denied the charges of habitual intemperance, &c., stated as causes of divorce. After replication testimony was taken and submitted to the court, whereupon a decree was entered June 7, 1881, dissolving the marriage ; " and all right, title or interest of the said John W. McGill in or over the estate or person of the said Mary J. McGill, both real and personal, shall henceforth cease and determine. And the said defendant is hereby ordered and directed to surrender the possession to said Mary of all the lands described in the exhibit and filed with complainant's bill, together with all notes taken for rent thereof. And the court doth further order and decree that the female child of the marriage of the said Mary J. and John W. McGill, named Mary Ida, shall remain in the care and custody and under the control of the said Mary J. McGill, and all the lawful power and authority of the said John W. McGill over the person and estate of the said female child shall cease and determine during the lifetime of the said Mary J. McGill, or until such time as this or some other court of competent jurisdiction shall order or decree to the contrary."

Defendant appealed and prays a reversal of the decree:

*First.* Because the marriage ought not to have been dissolved.

*Second.* Because petitioner ought not to have been de-

creed to surrender to plaintiff the possession of all the lands described, with the rent notes taken for the rent thereof.

*Third.* Because the child ought not to have been decreed to remain in the care and custody of the plaintiff.

*Fourth.* Because the lawful power and authority of petitioner over the person and estate of said child ought not to have been decreed to cease during the life of the plaintiff.

In this case it is not necessary that the testimony or any considerable portion of it in detail should be published. It is sufficient to say that upon a careful and repeated reading of all the evidence, our conclusion is that from a period commencing soon after the marriage of these parties in 1873 down to the time of commencing this suit, and subsequently, the defendant had a persistent habit of becoming intoxicated from the use of strong drinks to such an extent that his presence in the marital relation with the complainant was repulsive and ought not to be tolerated. The charge of " habitual intemperance," a cause for divorce under the statute, is sustained by the testimony.

I. At the hearing of this appeal a motion was made that the testimony of the parties be struck out and not considered by this court. At the common law the testimony of husband or wife was not admissible in evidence to affect the rights or interests of either. This exclusion was placed on grounds of public policy and not alone on grounds of specific interest in property. Schouler on Husband & Wife, §82 ; 2 Bishop on Marriage and Divorce, §§283 and 284 ; Marsh vs. Marsh, 29 N. J. Eq., 296 ; Dwelly vs. Dwelly, 46 Me., 377.

The statute of this State innovates upon the rule of the common law to the extent that interest in the event of an action or merely being a party will not exclude a witness from testifying, and in civil actions married women are not excluded in cases where their husbands are competent wit-

nesses. McC. Dig., 517, 518. These provisions do not repeal the common law rule in respect to the testimony of the husband and wife in suits for divorce where the very existence of the marital relation is involved. Lucas vs. Brooks, 18 Wall., 436, 453. In such cases the rule of exclusion based upon grounds of public policy would seem to find its strongest argument. It is founded in the inviolability of confidence between married persons, and in the stability and peace of families. The exception recognized is in cases of violence or threats where sureties of the peace may be required. Recently, however, in England an exception was made where natural impotency was charged and corroboration was in the nature of things impossible. 2 Bishop Mar. & Div., §283, note.

The common law rule prevails in this State.

In examining this case we have not taken the testimony of either party into account in coming to a conclusion upon the merits. It is sufficient to say in reference to the testimony of this husband and wife, that it shows the wisdom of the rule of the common law.

II. Upon the part of the complainant the testimony of fourteen witnesses was taken, nearly all of whom testified to the habits of the defendant and his daily life and condition at his home and with his family. This testimony shows that he was almost constantly under the influence of intoxicating liquors; and though not always or every day intoxicated, yet he was so often and so thoroughly in that condition at home that it was habitual and persistent. There were brief periods or intervals when he was sober and abstemious or temperate, but these were exceptions to the rule as detailed by all these witnesses. And when considerably under the influence of liquor he was quarrelsome, profane, profuse in threats of violence, and was guilty of acts of cruelty upon his wife and her children. From this

testimony we can only conclude that the defendant is, as stated by some of the witnesses, absolutely crazed and maddened by the excessive use of intoxicating liquors, while, when not under such influence, he is an amiable and intelligent gentleman.

On the part of the defendant there were twenty-six witnesses, most of whom are recognized in the community as intelligent, candid, business men, as the testimony itself shows.   Nearly all of them testify to the fact that he habitually or frequently uses intoxicating liquor; some of them have not seen him much under its influence; some have seen him at times apparently affected by it, and some of them have occasionally, but not often, seen him intoxicated.   They agree generally that when away from home, and attending to business, he is capable of doing business, and most of them express the opinion that from their knowledge and observation he is not "habitually intemperate."   They generally agree, however, that he drinks when invited, and generously "treats" his friends.   Several of them testify that he was in the practice of carrying liquor home with him.

These witnesses do not testify to his condition and conduct at his own house and with his wife and family, while the most of the witnesses for complainant do testify as to that.   It was urged that some three or four witnesses for the complainant were of her own family and children, who were prejudiced or influenced against him.   But while making due allowances for this, they are corroborated in their general testimony as well as in respect to particular facts by all the rest of the witnesses of the daily life of the defendant at home.

Giving entire credence to the testimony of the witnesses for the defence, it is shown that when abroad in the community transacting business he is not habitually intoxi-

cated or intemperate. But this testimony does not controvert the unimpeached testimony of the dozen witnesses who prove that at his house, with his family, he has a persistent habit of becoming intoxicated—is habitually intemperate within the meaning of the statute, and that his conduct has been such as to fully justify this appeal of his wife for liberty. The offence contemplated by the statute is the *habit*, and frequent recurring drunkenness proves it. 1 Bish. Mar. and Div., §813; Golding vs. Golding, 6 Mo., App. 602; Blaney vs. Blaney, 126 Mass., 205.

III. The decree requires the surrender of the separate property of Mrs. McGill to her by the defendant, together with the notes taken for the rent of the lands. It is insisted that this is erroneous.

Schouler on Husband and Wife, §560, thus gives the American doctrine upon this subject: "Upon the dissolution of the marriage all the husband's claims to the wife's lands, which depended on the marriage, become extinguished, and she is entitled to possession; and her statutory disability to alienate such lands is removed. Porter vs. Porter, 27 Gratt., 599; Piper vs. May, 51 Ind., 283.

No one can doubt that when the bonds of matrimony are dissolved the parties ought to be placed as near as may be in the same situation they occupied before the marriage. 2 Bish. Mar. and Div., §475. But the appellant says that a court of equity is not the proper forum in which the possession of land should be recovered. That rule, as applicable to the recovery of lands generally, has been several times enforced in this court in cases where bills were filed in equity, and the suit should have been ejectment. This is not that case. Here the wife seeks a divorce from the bonds and prays to be restored to the possession of her separate property as against the marital rights of the husband, (and it is confessed here that he has only marital

rights,) such rights being extinguished by the decree of divorce, the court having power over the whole subject should make its decree effective by giving her the full control of such separate property. His estate being terminated by the decree, the same court should dispose of it according the legal rights and status of the parties. There is no controversy as to the title. Such decree is conformable to the usual practice in similar cases. 2 Bish. Mar. and Div., §475.

IV. As to that part of the decree which requires the defendant to surrender notes taken by him for the rent of the lands of complainant, (which lands by the ante-nuptial agreement and by the statute were under the care and management of the defendant as her husband,) the first mention made of such notes is in the decree. We know nothing of their origin except they are treated as notes taken "for rent;" whether for the past or the future use of the land is not stated. There is no testimony on the subject. If there are such notes in existence, given to the defendant for accrued rent, they are beyond the reach of the complainant by force of the statute. The act of 1845 provides that the separate property of the wife shall remain in the care and management of her husband, and that she shall not maintain a suit against him for the rent, hire, issues, proceeds or profits of said property. The policy of this statute is to give to the husband the current use and proceeds of the land received during coverture, and he is under no obligation to account to her therefor. It is therefore beyond the reach of the court in a proceeding for a divorce.

V. The next question considered is whether the decree is proper in respect to placing the infant child in the exclusive custody of the mother until the further order of the court.

The rule in such cases is thus stated in brief in 2 Bish.

on Mar. and Div., 6 Ed., §528, *b.:* "On the question of the custody of a child, as between father and mother, his claim is by one unwritten law superior to hers, of course also superior to any third persons; but by ill conduct he may forfeit this, his superior right, or the custody may be given to the mother out of regard to the interests of the child." And see numerous authorities cited by Bishop in notes. In addition to the power of the Court of Chancery in divorce suits over the property of the parties there is another relating to the custody of minor offspring. The court here exercises discretion, as generally, in the chancery award of custody, the power being often reserved to open, alter and modify the decree of divorce in this respect from time to time. Schouler on Husb. and Wife, §555.

The court will interfere, for the due protection and education of children, with the ordinary rights of parents as is natural guardians in cases where it is found that the father guilty of gross ill treatment or cruelty, or that he is in constant habits of drunkenness, or that he otherwise acts in a manner injurious to the morals or interests of children. Story's Eq. Jur., §§1341, 1341 a., *et seq.*; English vs. English, 32 N. J. Eq., 738; Anon, 55 Ala., 428; State vs. Smith, 6 Greenleaf, 462; and see notes to the latter case in 30 Am. Decisions, 330, containing a voluminous collection of cases relating to the care and custody of infants, and the power and discretion of courts of law and of equity over them.

VI. Upon the filing of the bill the Chancellor made an order restraining the defendant from entering upon the premises occupied by the complainant in Quincy without her consent or otherwise, molesting her or her children or interfering with her custody, control or management of them during the pendency of the suit. This order was made without previous notice to defendant of an applica-

tion therefor. This is claimed to be error, first, because the order was improper; and, second, because of the want of notice.

We think the allegations of the complainant in the bill clearly warranted the order enjoining the defendant from annoying or molesting her in the house she occupied with her children in Quincy, and from interfering with her care and management of her family.

Whether the Chancellor in making this restraining order acted with perfectly sound discretion in dispensing with notice to the defendant, and whether the order here made is properly a subject of review, is not material at this stage of the case. It does not affect the merits of the controversy. A final decree has been entered, and this decree is not controlled or affected by that order, whether regularly or irregularly made. If irregular, it is no ground, therefore, for reversing the final decree.

The decree appealed from is affirmed except as to so much thereof as directs the defendant to surrender to the complainant the notes received for rents accrued during coverture, which is reversed. Costs to be paid by appellant.

### SECOND APPEAL.

THE CHIEF-JUSTICE delivered the opinion of the court.

On the 7th day of June, 1881, a decree was rendered in behalf of the appellee dissolving the marriage between the parties, and also directing appellant to surrender to the complainant, appellee, all the property she was entitled to under the marriage settlement and the notes taken for rent of the lands mentioned therein, and decreeing the custody of the child of the parties, and enjoining him from interfering with the care and custody of the child, &c., and that he pay the costs.

From that decree an appeal was taken within ten days by this appellant who executed a bond in the sum of one hundred and fifty dollars with sureties, which bond was duly approved by the clerk, conditioned to " pay the condemnation and costs in case said final decree of the Circuit Court shall be confirmed by the Supreme Court."

Afterwards on the 9th day of September, 1881, upon the petition of the complainant the Judge made an order that eleven bales of cotton, the amount of rent due on the land of petitioner, be surrendered and delivered to the sheriff of Gadsden county by the said John W. McGill or by John McLaughlin, the party from whom the rent is due, and in default thereof, upon demand made, that said sheriff do seize and hold in his custody the said eleven bales of cotton until the further order of this court, or until the said John W. McGill shall execute and deliver to said sheriff a good and sufficient bond in the sum of $1,000, with securities to be approved by him, conditioned for the delivery to him of the said eleven bales when demanded under and by the authority of the court.

This appeal is taken from the last mentioned order, upon the following grounds, and a reversal is prayed :

1. Because said order destroys the effect of the supersedeas which had been obtained to the final decree mentioned in appellee's petition.

2. Because there was no case made either in the original bill or petition authorizing the court to appoint a receiver and direct him to take possession of the eleven bales of cotton.

3. Because no notice was given of the application upon said petition for such order.

The first question presented upon this appeal is, whether the appeal from the final decree operated as a supersedeas as to the decree of divorce and the disposition of the prop-

erty therein provided for; in other words, whether an appeal taken within thirty days after the said decree of divorce and bond given and approved, as provided by law in common law actions, suspended the action of the court in that case. The order now appealed from was made after the appeal from the decree of divorce was taken and bond given.

By the act of February 10, 1832, when decrees could be entered only in open court, it was provided that any party to a judgment, sentence or decree might " during the session of the court at which such judgment, sentence or decree is rendered or pronounced, or within ten days thereafter," obtain an appeal, and that such appeal should in all cases operate as a supersedeas. The party appealing, if defendant, was required to give bond with surety " in a sum sufficient to recover the amount for which judgment had been given, decree rendered or sentence pronounced, together with costs," conditioned that the appellant shall pay " the debt, damages or condemnation, and costs, in case the judgment, sentence or decree of the Circuit Court shall be confirmed." Th. Dig., 446.

On February 11, 1832, "an act to amend an act to regulate proceedings in chancery" was passed, (Th. Dig., 462, Sec. 3,) providing that the plaintiff or defendant therein "may appeal from the said decree at any time within two years; *Provided, however*, That the same shall not operate as a supersedeas unless the said appeal be taken within the time fixed by law in other cases, or if not taken within that time, upon an order of one of the Judges of the Supreme Court, directing the said appeal to operate as a supersedeas, in which event bond and security shall be given as provided by law."

It is thus found that the only security exacted under the statute is a bond for the payment of money, " *the* debt, dam-

ages or condemnation and costs," in case the judgment, sentence or decree shall be affirmed; the amount being "a sum sufficient to cover the amount for which judgment has been given, decree rendered or sentence pronounced, together with costs."

The decree in the present case pronounces a divorce, decrees the custody of the child, requires the defendant to surrender the wife's separate real and personal property (no value thereof being named) to surrender certain notes (no value named) and to pay the costs of suit. The bond given was in the penal sum of one hundred and fifty dollars to cover the *amount* of the decree rendered. The only "amount" mentioned in the decree is the sum of the costs taxed.

It was clearly within the contemplation of the Legislature that the decrees mentioned in the statutes referred to were those which required the payment of money and no others. The provisions relate to the "judgment, sentence or decree and the *amount* for which the same were rendered or pronounced. There is nothing in the statutes indicating that the power of the Chancellor or the Appellate Court, as it has existed for a long period in the administration of equity, was intended to be controlled or regulated by them, except in cases of decrees for the payment of money, in which cases the bond required is the same as that to be given to secure money judgments at law."

"It is an established rule that an order for a rehearing or an appeal does not stop the proceedings under the decree or order appealed from, without the special order of the court. And it seems that it is the duty of the court to exercise its discretion according to the circumstances of each particular case, and no general rule can be laid down upon the subject." 2 Dan. Pl. & Pr., Perkin's Ed., 1547, 1549.

The "amount" of a decree which directs the delivery of

specific articles, of pictures, of title papers, of stock certificates, documents and the like is an absurdity. The settled rules of equity, like those of the common law, are the law of the land wherever the English system prevails, until changed by the Legislature or by its authority ; and until the Legislature authorizes the change in cases other than those where money is decreed to be paid the power remains in the court to suspend decrees, when appeals are taken, upon such terms as shall be deemed appropriate to the protection of parties.

The reasonable conclusion is that on an appeal from a final decree contemplating the future action of parties and of the court, except for the payment of a sum of money named, the granting of a *supersedeas* is still within the power and discretion of the court and has not been affected by legislation.

In the present case the giving of the bond by the appellant did not suspend the decree except so far as it directed the payment of money by the defendant, and so far as the power of the Chancellor is concerned in respect to the delivery of the property mentioned or the custody of the child, it remained unaffected by the appeal and the giving of the statutory bond.

As to the decree last appealed from, by which the defendant is directed to deliver to the sheriff " eleven bales of cotton, the amount of rent due on the land of petitioner " (complainant), it cannot be sustained. We held, on the appeal from the principal decree in this cause, that the wife can have no action against the husband for the rents and profits of her land which were in his possession, care and management in virtue of his marital rights under the statute of 1845. Upon further consideration we find no reason to change our conclusions there expressed. McGill vs. McGill, decided at the present term.

The order of 9th September, 1881, is reversed.