EPPINGER, RUSSELL & CO. ET. AL., APPELLANTS, VS. FRANK CANEPA, EXECUTOR, APPELLEE.

FRANK CANEPA, EXECUTOR, APPELLANT, VS. EPPINGER, RUSSELL & CO. ET AL., APPELLEES.

1. Upon a bill by creditors against an executor, alleging deficiency in personal assets and insolvency, and praying a discovery of all assets, their sale and the application of the proceeds to the debts, it is erroneous to direct an execution to issue against the executor as for a *devastavit* to the extent of the estimated value of the assets in his hands subject to administration. To the extent that the assets consist of money in his hands, he should be directed to pay the same into the registry of the court; and if a sale of the real and personal property of the estate is necessary to the satisfaction of the debts proved before the master, it should be decreed. An execution against the executor should issue only for the sum with which he is chargeable on account of losses occasioned by negligence or failure in the discharge of his duty, or like causes. It should issue then only in the event that the

money and the proceeds of the sales of the property are not sufficient to satisfy the claims of the creditors. Creditors have such equities whether the estate is solvent or insolvent. It is the ordinary bill by creditors for the marshaling and administration of assets of an estate.

2. Where the responses of the answer are as broad as the allegations and interrogatories of the bill, there is replication to the answer, and the general facts to be proved are put in issue by the pleadings, it is sufficient. Proof of a fact not specifically alleged, but embraced substantially in the case made by the answer and the bill, is admissible.

3. Two life insurance policies, each for one thousand dollars, are taken out by A payable to. himself. He subsequently places on each policy in writing a direction to pay the money upon one policy to one person and upon the other policy gives a like direction to pay its proceeds to another person. There is no evidence that the insured at the time these contracts or this direction was given was indebted : *Held*, That under the statute of this State the written direction proved to have been made by the insured, is a written declaration in the policy of the person for whose use and benefit it is intended, and that under the statute such named persons are entitled to the proceeds of the policies as against creditors of the deceased insured.

4. In a life insurance where the premiums paid are reasonable in amount, looking to the condition in life of the assured, and there is no proof of an actual purpose at the time the contract of insurance is entered into to divert the money from anticipated debts, and to defraud creditors, the statute protects the proceeds from the claims of creditors in favor of the beneficiary named in the policy, and upon the death of the assured whether he be solvent or insolvent the amount of such life policy is exempted and protected from the claims of creditors.

5. Where plaintiffs allege the existence of a partnership between themselves and a party deceased in a suit against the executor of the will of the deceased party, such plaintiffs are incompetent witnesses under the statute to establish transactions or communications between them and the deceased party by which they claim a partnership resulted, no evidence of such partnership appearing upon the books of the firm.

6. Where the conflict in the testimony is clear and the court cannot upon a review of the evidence say that the findings of a master

and a referee are wrong, they must be sustained. In a case of simple conflict the court cannot direct the finding to be for one party rather than the other.

7. An executor is entitled to credit for sums paid an attorney for legal advice when the charges are reasonable and proper in amount.

8. The executor in possession of the real estate of the deceased, when the rents thereof are necessary to the satisfaction of the debts, is personally accountable to the creditors for the rental value thereof when the circumstances of the case disclose a failure to realize rents and neglect to exercise the diligence and business activity required at his hands in the management of the property.

9. The executor collects money of the estate and permits it to remain in bank uninvested. It not being affirmatively shown that no good security could be found on which to put it out at interest, the executor failing to pay it into court, is chargeable with it under the statute as money retained on interest by him, and it should enter into his annual returns as money so retained, interest being added to the principal annually.

10. Where the executor fails to file an inventory of the personal property of the estate, neglects to make his annual returns, and fails generally to discharge his duty, he not only forfeits his commissions but is also properly denied any compensation for general services.

11. The subject of an exception to the report of a master and the finding of a referee is a particular account which the master has stated from the books. The exception is overruled by the referee, he finding upon comparison of the account with the books from which it is taken that it is correctly stated. This court must, under these circumstances, presume the account to be correctly stated, the books not being before us.

12. It is too late to urge here exceptions to accounts which the referee finds were admitted by the party when before the master, the record disclosing that the accounts went before the master without objection.

Appeal from the Circuit Court for Duval county.

This case was tried before Mr. John C. Cooper as Referee. The facts are stated in the opinion.

*H. Bisbee, Jr.*, for Eppinger, Russell & Co.

To constitute a title by gift there must be something more than an expressed intention to give; the intention must be consummated by an actual delivery and a parting with all dominion over the thing given by the donor beyond the power of revocation. 1 Fla. Rep., 63; 4 Fla. Rep., 474; 80 N. Y., 422; 70 N. Y., 212; 68 N. Y., 625; 2 Baileys, S. C., 588; 35 N. Y., 215; 75 N. Y, 134; Bliss on Life Insurance, §330, p. 546.

Assignment: Where the insured assigned by an endorsement on the policy to a third party to pay a debt, the insured retaining possession, and subsequently died insolvent, *held not valid*, and that the proceeds were assets. Palmer vs. Merrill, 6 Cush., 282; Bliss on Life Insurance, §329.

But here there is no proof of any assignment in writing, nothing more than a memorandum, or the policy expressing an intention of giving the proceeds to the minor children of Barker, and thus purely voluntary.

The testator kept possession of the policies until he died. He instructed the draftsman of his will to bequeath them to these two children, and they were so bequeathed, thus showing that he regarded what he had written merely as memoranda. The will was executed on the 6th and he died on the 13th of December, 1875.

Defendant's last resort: Having failed to prove an assignment as alleged in the answer; having failed to prove a valid gift, he resorts to the parol testimony, which was admissible to prove either assignment or gift, *to prove that the testator had these children in his mind at the time he obtained the policies*, as the beneficiaries thereof; and therefore they are the beneficiaries as completely as if they had been named in the policies as such.

Now in the first place, the defendant having put his defence upon title in the children by *assignment* by the testator, and proceeds to trial, and rested his defence on that

theory, he must be limited to it. It is true he was allowed to examine Mrs. Barker as to the oral statements of the intention of Streiber without objection, while complainants were taking rebutting testimony. Why? Because to prove an assignment or gift, such testimony was admissible, and could not be objected to when offered for that purpose at the proper time. This, offered after defendant had closed his case, it was not objected to being in the discretion of court to receive it.

But if the point had been made in the answer, that these children were the real *beneficiaries* and proof of it attempted by parol testimony, the court can readily see it would have been objected to as inadmissible to vary and contradict a written instrument.

I insist, therefore, that it is proper to make this objection now, otherwise complainants are taken by surprise and injured by allowing defendant to change his defence at the hearing of the cause and without notice. By doing this defendant is not injured, as it is manifest that had Mrs. Barker's testimony as to deceased's oral statements been objected to and ruled out, he could not have supplied it by better testimony. 14 Peters, 448.

We say then to hold these children are beneficiaries, the same as if named in the policies, on the ground that the insured stated to their mother that he had taken them out for their benefit, would utterly destroy the rule that oral testimony is not admissible to vary a written instrument.

Had the testator so intended he would have had the names of the children inserted in the policies. That he did not proves that his last intention was that they should not be.

Besides, Mrs. Barker's testimony, as to what the testator said two or three years before his death, especially what he said in 1870, *before* the date of the policies, *should*

*not have much weight.* It is within the spirit of the statute *prohibiting* such testimony. It is the testimony of the mother of the children, respecting conversations with the deceased; it is adduced at a stage of the cause when it is apparent her cause was lost without it, and the temptation is too great to color the testator's alleged statements to suit the exigencies of the case to entitle such testimony to be relied upon.

In a similar case proof of oral statements of the insured that he intended the policy for his son, the latter not being named therein : *Held*, inadmissible. 99 Mass., 342; Bliss on Life Insurance, p. 635.

It is also held that insurance policies prove no exception to the rule that oral evidence cannot be received to vary written instruments. 23 N. Y., 516; 17 N. Y., 199, note.

It follows that the proceeds of the policies are assets to be accounted for by defendant.

The bill joined defendant as executor and guardian of the minor children in question. It avers that he qualified as executor on the 16th of December, 1875, and as guardian on the 16th of May, 1876; all averments as to Canepa being guardian were stricken out of the bill, on demurrer for multifariousness.

The answer admits he became executor as charged, the proof shows that he received the drafts paying these policies about the 4th or 5th of May, A. D. 1876, such drafts being payable to him as executor, and he admits in his testimony that he received the money.

The answer avers that the proceeds of policies *were collected by the guardian of the children,* (the name of the guardian not being given,) and is held for their benefit. Replication puts this averment in issue, *and there is no proof whatever that any guardian has ever been appointed.* The proof then, showing that these moneys were assets, that

defendant reduced them to possession, and that he is the
executor, we submit that it is manifest, that defendant as
executor is the proper party to proceed against to subject
these funds to the payment of testator's debts, and this too,
whether the claim of the children be rested on the ground
of assignment, gift or under the will. He reduced these
moneys to his possession as executor, in the eye of the law ;
his subsequent parting with possession of them, is his own
wrong, and does not relieve him from accounting for them
any more than the voluntary disposition of any other as-
sets of the estate would relieve him.

If any doubts arise as to what may have been the lan-
guage of the policies, they should be resolved against re-
spondent. *Prima facie they are assets;* appellants have
proven they were made payable to Streiber himself. To
support the contrary the burden of proof is upon defendant.
He should have produced the policies. He has not done
so, nor shown satisfactory reason for their non-production.
Schnabel, the agent of the insurance company, resides in
Jacksonville, and examined as a witness. The policies were
taken out from this agent's office, and it would have been
an easy matter to have introduced a sworn copy of the
policies.

The statute of Florida, Chapter 1864, has no application.
Testator left neither wife or child, and no *beneficiary is
named in the policy other than the assured.* It is only such
policies as the statute describes, the proceeds of which can-
not be reached by creditors. Were it otherwise, if deceased
had died intestate, no one could take, and the proceeds
would escheat to the state. Such an absurdity was never
contemplated by the law-makers.

Again the statute speaks of policies *left* by a person at
his death. These policies were not *left* by deceased ; he
bequeathed them to these children *seven days* before his

death. He had thus disposed of them. But he was then insolvent; they go to the children subject to the rights of the creditors; *hence the necessity* of ignoring the will and claiming by some title *prior* to the date of testator's indebtedness. The statute not applying, the proceeds are assets at common law. Hathaway vs. Sherman, 61 Me. Rep., 466; 37 Me. Rep., 359; 3 Sneed, 565.

Second ground of appeal: Because the referee allowed a credit of $1,800 to Streiber in his accounts with Eppinger, Russell & Co., on account of salary from April 1st, 1883, to April 1st, 1874.

The testator kept the books of the firm of E., R. & Co., and the firm's account sued on is in the hand writing of deceased, except certain specified items of debit, entered by John S. Driggs. These specified items are all sworn to by Synox, the bookkeeper of the firm in New York, who attaches to his testimony vouchers for all such debit entries.

At Streiber's death the books kept by him, the entries therein being in his hand writing, showed an indebtedness of about $8,000. No credit had been entered by Streiber subsequent to March, 1873.

Russell and Eppinger testify that about the first of April, 1873, Streiber became a member of the firm with one-sixth interest.

That about one year thereafter, in March, 1874, the firm met with very heavy losses, of which Streiber's share was $10,000; that Streiber became alarmed at such a loss, said he could not risk being a partner longer, and that it was agreed that he should retire from the firm *without paying any portion of the losses*, and thereafter, to wit: after April 1st, 1874, he, Streiber, should have a salary as bookkeeper and agent, of $3,000 per year. After testator's death Driggs succeeded him as bookkeeper, and on Russell's instruction credited Streiber's account with $4,250, his salary from

April 1, 1874, to September 1st, 1875, when he ceased work. But this credit of $4,250 was ordered and given on the basis of a partnership as testified to by Russell and Eppinger, which would leave one year ending April 1st, 1874, during which Streiber, being a partner, would have no compensation, *and would be relieved of $10,000 loss.* On this theory the credit was ordered of $4,250. Master and referee find there was no partnership, and credit deceased with $1,800 for salary for the year. Appellants contend he was a partner, because that was the salary he was receiving just prior to April 1st, 1873.

The question is, is a partnership proven? Appellants contend that it has been established, and rely upon the testimony.

2d. We rely upon the fact that the testator borrowed of Russell $500 December 19th, 1874, for which he gave his note, payable with interest. This shows that testator, feeling that he was largely indebted to the firm, thought it more honorable to borrow the money at interest than to draw more money from the firm. If he had been entitled to credit himself with a salary of $1,800 for the year in question he would not have borrowed the money. Such credit would have nearly equaled his indebtedness at that time.

3d. Upon the various conversations about being a partner or not, *after the heavy losses of the spring of 1874,* testified to by Barker, Moody, Driggs and Gumminger.

*The weight of evidence establishes a partnership,* and that in the spring of 1874, *by reason of heavy losses, the deceased* began to agitate the propriety of retiring, and returning to a salary, and it was finally decided he should have a salary from April, 1874, of $3,000.

But if there was no partnership, then all the parties should be remitted to their status on April 1st, 1873, Strei-

ber credited with his salary at $1,800 per year up to September 1, 1875, and the firm not charged with salary at $3,000 per year from April 1st, 1874, to September 1st, 1875.

This last charge of salary at $3,000 per year, or credit to Streiber of $4,250, was made on the statement of Russell to Driggs, but if all the other testamony, showing a partnership, is to be ignored and rejected, then that part of Russell and Eppinger's testimony relative to a salary at $3,000 per year, should likewise be rejected.

Otherwise, *E., R. & Co.*, *would be the victim of their own integrity*. Had Eppinger and Russell *kept silent* nothing would have been known about the partnership, nor the credit of $4,250 for services subsequent to April 1st, 1874, for Streiber had not given himself a single credit subsequent to April 1st, 1873, (the date of the alleged partnership), thus showing some change in his relation to the firm) and the result would have been that defendant could not have proven that deceased was entitled to any other credit than $1,800 per year subsequent to April 1st, 1873, or $4,250 to September 1st, 1875, date he ceased work. The result is, if this credit of $4,250 and the $1,800 given by the referee for the year ending April 1st, 1874, stands, the firm of Eppinger, Russell & Co. lose by telling the truth $1,700.

It is submitted that this would not be justice, and that the act of relieving Streiber of a loss of $10,000 was generous treatment, deserving a better return than an infliction of a further loss of $1,700.

It is thus seen that there *was no motive for* Eppinger, Russell & Co. to establish a partnership and credit deceased with the $4,250; for without any partnership being establisned, and E., R. & Co. remaining silent, he would have credit for $4,350, just one hundred dollars more, too insignificant a sum to tempt even a scoundrel. We submit that

the partnership is established, and the credit of $1,800 erroneous.

The third ground of appeal: Allowing respondent credit for $50 paid McDonald and $100 paid Baker for professional services, when such reckless disregard of his trust by the trustee is shown, as this case presents, he should not have credit for counsel fees.

He was manifestly acting in collusion with the Barkers. He put them in possession of the real estate to enable them to rent theirs, and turned over proceeds of insurance policies to them with improper haste.

The little money he has had on hand, after paying taxes on the real estate occupied by the Barkers, or insurance on the houses, while not charging them with any rent, has remained unproductive, and at the same time undisputed claims against the estate drawing interest remain unpaid to this date.    It is submitted that the decree is correct except on the grounds upon which the appeal is presented.

*W. B. Young* for Canopa.

The demurrer for complainant's bill was properly sustained.    The executor represents distributees and legatees, and they cannot be heard but through him.    Johnson vs. Lewis, 1 Rice's Eq., 40 ; Story Eq. Pl., §141.

The executor is the person constituted by law to represent the assets of a deceased person, and to answer all demands upon them, and therefore where the object of a suit is to charge such assets it is sufficient to have the executor before the court.    Daniels' Ch. Pld. & Prac., 301 ; Story's Eq. Pl., §140 ; Head vs. Perry, 1 Monroe, 225.

No suit can be maintained against a guardian as such.

If the creditors were seeking to reach a fund which was not assets then suit should have been brought against the

claimants and holders of such fund and the executor should not have been joined as a defendant in such suit.

There are two reasons why the executor should not be charged with the proceeds of the life insurance policies :

1st. The statute says that whenever any person shall die leaving insurance upon his or her life it shall go to the wife or husband and child or children, or to any other person for whose use it is declared in the policy. Now it is clear that if no one is specially named in the policy as the beneficiary it will go to the wife or child, if any there bè, and if any one is specially named, to the person named. But there might be no wife or child and no one might be named in the policy, or, as in this case, the deceased might be named. In such case, in the absence of a statute to the contrary, the proceeds would then become assets in the hands of the executor for the benefit of creditors. But the statute comes in, in the next clause, and says that creditors shall not obtain the benefit *unless* the *policy declares* that said insurance is for their benefit. The words proceeds thereof, refer to such policies as are mentioned in the statute, and they are policies upon the life of one who dies in this State, whether any one is or is not named in them as beneficiaries. To hold that creditors can share in the proceeds of a policy of life insurance which does not declare that it is for their benefit would be to hold that the latter clause of the statute was mere surplusage.

The courts will give force and effect to every word in the statute, if possible, and will not presume that any part thereof is surplusage. Shever vs. Hays, 3 Cal., 115 ; 31 Cal., 412 ; 28 Cal., 142 ; 32 Cal., 499.

The policies in question were made payable to Streiber, the deceased, but from the very nature of the contract they could never be paid to him, so the conclusion is inevitable that he took them in his own name for the benefit of

some one else. If the name of the person for whose benefit the insurance is obtained does not appear upon the face of the policy, extrinsic evidence may be resorted to ascertain the meaning of the contract, and when thus ascertained it will be held to apply to the interests intended to be covered by it, and *they* will be deemed to be comprehended within it who were in the mind of the party when the contract was made. Pace vs. Pace, June Term, 1882.

The evidence indisputably shows that the policies were taken out for the benefit of the Barker children.

The above is the rule of law independent of the statute. Pace vs. Pace, and authorities therein cited.

There is nothing to show that creditors were in the mind of Streiber, but on the contrary the secreditors all became such after the taking out of the policies. Pace vs. Pace.

The executor, the legal representative, had no title and was in no way entitled to possession of this fund. Pace vs. Pace.

2d. The policies were choses in action, and if the Barker children were not beneficiaries therein from the time they were taken out, then they belonged to Streiber until he transferred them, and if he disposed of them in his life time his executor had no right to them, and they, or the proceeds thereof, are not assets of the estate.

The evidence shows that Streiber did part with them in his lifetime.

The only way for a creditor to reach any property which his debtor may give away during his life, and which the creditor is entitled to subject upon the ground his debtor is insolvent and must be just before he is generous, is by proceeding against the parties to whom it is given in fraud of the creditors' rights, and the executor as such would not be a proper party.

The executor has no right to the proceeds of the two policies, and is not chargeable therewith.

The executor should not be charged with interest on the funds in his hands, unless guilty of negligence or unreasonable delay in settling, the evidence showing that he has never used them or made interest on them. The statute only requires executors to lend out the money of minors in their hands and makes them liable for interest on the surplus of the estate remaining in their hands and unemployed, after settlement of their accounts. McC., p. 94, §63; 1 Johnson's Ch., 620 and 527; Dexter vs. Arnold, 3 Mason, 284; Spruil vs. Cannon, 2 Dev. & Battle, Eq. Repts., 400; Chase & Crabb's Executors vs. Lockerman, 11 Gill & Johnson, 185, (35 Am. Dec., 277.)

The executor should not be charged with the rental value of the real estate. He testifies that he endeavored to obtain a tenant and failed, and got the Barkers to move in to protect the property. Mrs. Barker testifies that it was difficult to obtain a reliable tenant in that locality. There is no evidence to show that he would have procured a responsible tenant. The statute does not require the executor to rent out the real estate.

A mere failure to file his annual accounts is not such misconduct as will work a forfeiture of his compensation. Such failure is a mere irregularity and the statute imposes no penalty for the failure. The executor should not be deprived of his compensation except for gross and wilful misconduct. Gould vs. Hayes, et al., 19 Ala., 459; Pearce and Wife vs. Darrington, 32 Ala., 271.

The amount paid by the executor to counsel for professional services was properly allowed as a credit. 2 Henning & Mumford Repts., 9; Lomax on Ex'rs, Vol. 2, page 331.

*John Earle Hartridge* on same side.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The trial here was by referee.

This is a creditor's bill, charging the respondent as executor under the will of Wm. R. Streiber, deceased, with the reception of assets, consisting of real estate, on which there are two dwelling houses, some three hundred dollars of personal property, about $1,400 in money, and another item of money to the amount of about $2,000, the proceeds of two life insurance policies upon the life of deceased, payable to the deceased by name.

The bill charges that the creditors duly presented demands to the executor, to the amount of several thousand dollars, which he refused or neglected to pay; that he was wasting the assets; had neglected to make any settlements in the Probate office, or reports showing the cash assets received, and prayed a discovery as to the amount of estate received, and for an account and decree. Plaintiffs also allege that the estate is insolvent.

Defendant answers, admitting his appointment and qualifications as to executor; that he took possession of the assets and effects of the estate, with the exception of papers which plaintiff, John K. Russell, had taken from the possession of Mrs. Barker, the person in whose custody and control they had been kept by Streiber; that among the papers which he, as executor, received, there were no letters of Eppinger, Russell & Co., or of the plaintiffs; that he found only some receipts for some small bills from the first of the year 1873 to the middle of the year 1874. He denies that the testator was indebted as alleged in the bill and sets up facts which he claims show that the account is not as stated. He denies also that the estate is insolvent and admits the reception of certain moneys and effects for

which he is accountable. It is, not deemed necessary here to insert at length each of the allegations of the answer, as principal matters here involved arise upon exceptions to the findings of the referee, and the facts as they appear from the pleadings and evidence will be stated so far as deemed necessary in the consideration of the matters of exception which are brought to our attention by the appeals.

After demurrer sustained to the bill it was amended and there was replication.

After interlocutory decree of reference, report of a master and hearing by the referee, there was a decree by the referee against the defendant. This decree was based upon the report of the master, to which exceptions had been been filed, and the referee's action in allowing and overruling these exceptions occasioned the appeals in this case. Both plaintiffs and defendant appeal.

We examine first the grounds of appeal set up by the plaintiffs in their petition of appeal.

It is insisted, first, that the proceeds of two policies of insurance upon the life of the testator, Wm. R. Streiber, were assets of his estate, subject to the claims of plaintiffs, and that the finding of the referee to the contrary was error.

As to the matter of money realized by Streiber from these policies:

The plaintiffs in their bill allege simply, that the executor had collected considerable amounts of money due on policies of insurance on the life of the testator, Streiber, issued to the testator by the Continental Life Insurance Company of New York.

Defendant, in his answer, replies that the sums of money payable on the policies of insurance did not constitute assets of the estate; avers that during the lifetime of Streiber and before his last illness, he assigned and transferred

278                    SUPREME COURT.

Eppinger, Russell & Co. et al., v. Canepa, Ex.—Opinion of Court.

said policies to Hattie Barker and John Barker, minor children of Richard F. Barker and Mary Barker; that they had been collected by their guardian and were held by him for their use and benefit.

The next reference to this matter in the record is the testimony of the executor. He says that he received the sum of $1,960 56-100 on the policies of insurance from George Schnabel, the agent of the company in Jacksonville. The agent, Schnabel, testifies that on the 14th of May, A. D. 1870, he issued two policies of insurance upon the life of Streiber, each for the sum of one thousand dollars, and that the policies were "made payable to himself," Streiber; that after the death of Streiber they were paid to F. Canepa, as executor and guardian.

Mary Barker testifies that she was acquainted with Streiber from the time he came to the firm of Eppinger, Russell & Co., and for about six years before his death; that she took care of him during his last illness; that he placed his will in a box and told her to take care of it. The testimony of Richard F. Barker, the husband of this witness, shows that he also was on intimate terms with Streiber and that in the summer or early fall of 1874 he went to New York with him.

The executor being recalled, says that he saw the insurance policies left by Streiber; that when they were paid he gave them to Mr. Schnabel, the agent of the company, and has not seen them since. This witness says that " on the body of the policy was Mr. Streiber's name, I think, and on the face it was written in Mr. Streiber's hand-writing to pay the money, $1,000 each, to the Barker children." Upon cross-examination he says that " when Streiber died these policies were among his papers, at his house; that he did not recollect the date to the writing of Mr. Streiber on the face of the policies."

George Schnabel, the agent, being recalled, says that the policies were paid in May, 1876. The payment was in drafts in favor of Mr. Canepa, but whether they were drawn to him as guardian or executor he does not recollect. This witness being asked by the defendant's counsel whether there were any endorsements on the policies, and if so, what they were? states that the policies were endorsed in the hand-writing of Streiber, to the children of Mrs. Barker; that he does not remember on what part of the policies the endorsements were made, but probably on the back; that both policies bore the same endorsement; that it was in ink; that the children were mentioned by name, and that he does not remember whether they were signed by Streiber or not. He states that an effort has been made to obtain the policies, but it failed; that he does not remember the date of the endorsements or that there was any other thing written upon them by Streiber except as stated. He states that the drafts paying the policies were "by his best recollection to Mr. Canepa, as executor."

Mary Barker, the mother of the children, being recalled, testified that Mr. Streiber lived in the same house with us, when we lived at the mill (the mill was the place of business of a lumber firm, for which Streiber was a bookkeeper); that he lived with the family for about three years; that he used to come to her house every day before, for about six years after he came to take his meals with us and after he left the mill. Upon being asked whether about the year 1870, she heard Streiber say anything in regard to getting his life insured, she says she does not know the year but he did speak about the policies and we laughed at him and asked who he was going to take them out for, as he had no family; that he said he was going to get one for Hattie, meaning Hattie Barker, and one for John, meaning John Barker. He also said that he would get them out

for their education, and some time after that, we having no more talk about it, he brought the policies home one evening, and said he had got them, and sat right down and put Hattie's name on one policy and Johnny's on the other; that she don't know what the writing was, but saw the names of Hattie and John. This was done in my presence two or three years before his death; that when he made his will he took these policies from his box and showed them to Judge Emmons who was the person who wrote the will. He then put the policies and the deeds back in the box and handed the box to me, and told me to take charge of them; he had known my son Johnny since he was a baby; he would carry him to town with him; he did not know Hattie so well; he took Johnny with him to New York, and the last time he was in New York he brought the two children from New York, where they were. It is not deemed necessary to insert more of the testimony of this witness. It shows that the kindest relations existed between the parties, and that Mrs. Barker nursed Mr. Streiber for ten weeks during his last illness; Streiber died testate and by his will bequeathed these policies to the children. The executor here was also the guardian of the children. He swears that he turned over all the money realized from the policies under an order from the Probate Court of Duval county, to the guardians of the children, and there is in the record a copy of the proceedings of the Probate Court showing that fact.

The testimony establishes as matter of fact that each of these policies was taken out in the name of the testator himself; that in pursuance of an intention to apply the proceeds of the policies to the two children, Hattie and John Barker, he placed upon either the back or face of one policy a direction in writing, to pay the money to one of the children; and that he made a like direction to pay the

money upon the other policy to the other child. At the date of the policy, A. D. 1870, it is not pretended that the party was insolvent, or that the debts set up in the bill and proofs existed, and it is established that he was attached to the children, and that the most friendly relations existed between the insured and the father, the mother and these children.

The proof shows that the testator left no wife or children surviving him. There is no proof of the existence of any heir at law, and there is a testamentary disposition of the policies to the children corresponding with the directions made in each policy itself.

The question here is, are the proceeds of these policies assets of the estate subject to the claims of creditors.

It was insisted in the argument that there was here no gift or assignment of the policies to these children. This question we deem it unnecessary to decide, as a technical assignment or gift of a life policy is not required under the statute to protect the proceeds from the claims of creditors if the fact be that it is not declared in the policy that the insurance was effected for the benefit of a creditor or creditors, and there is in substance in the hand writing of the assured a declaration in the policy of the person to whose use and benefit the policy is declared to be.

Streiber here took out the policy payable to himself. The amount was to be paid upon his death. He had a right to direct to whom it should be paid. Insurance policies other than those payable before death, are ordinarily taken out for the benefit of some.third person or class of persons, and not as a mere investment for the benefit of creditors. It was in view of this supposed intention that our statute was enacted. Under this statute, as against the wife and children of the insured, or as against any other person, for whose use and benefit said insurance is declared in the policy, the

creditor cannot claim. Indeed, the statute, if its strict letter is to control, provides that the proceeds of any life policy shall " *in no case* " enure to the benefit of a creditor or creditors, unless the "policy declares that said insurance was effected for the benefit of such creditor or creditors." This policy being in favor of Streiber himself, he had a right to insert in the policy such a declaration. This he has done and we think it is effective to entitle the parties to the proceeds.

So far as the matter of insolvency is concerned we do not think, under our statute, that it would make any difference if the premiums to be paid were reasonable in amount, looking to the condition in life of the assured and other circumstances, and there was no proof from which it could be presumed that the *actual purpose* had in view at the time of perfecting the contract of insurance was to divert the money from the payment of anticipated debts and in fraud of his creditors. In other words, we mean to say that upon the death of the insured, whether he be solvent or insolvent, the purpose of the statute is to protect the amount of a policy of insurance reasonable in its character from the claims of creditors, and to secure the amount realized therefrom to the beneficiary declared therein.

The rulings of the courts upon this subject are conflicting. See cases cited in May on Insurance, §391, note page 590, second edition. We are therefore to construe our statute according to the policy of the law, and the intent of the Legislature, and this policy and intent we think are fully carried out by here declaring that the amounts of these policies were not assets of the estate. A case arising apparently under a somewhat similar statute to our own is cited in May on Insurance, note to §§390, 451, pages 583, 681, second edition, which we have been unable to examine. It is the case of Brossard vs. Masso-

nin, Supr. Court, (Montreal) 4 Ins. L. J., 395. See also Pullis vs. Robinson, 73 Mo., 201. The statute here construed will be found at length in the case of Pace vs. Pace, 19 Fla., 438, to which case also attention is called.

To hold that the proceeds of these policies were subject to the claims of creditors here would be in effect to say that the declaration here in the policies amounted to nothing.

Where such a declaration appears in the policy the presumption is that it was made when the policy was taken out or shortly thereafter. We cannot see why the written declaration in the policy here cannot be shown to be by the assured. The statute does not require the declaration to be signed, and we should not extend its requirements by construction. In this case Streiber spoke to Mrs. Barker of getting out the policies for these children, and she says that some time thereafter " he brought the policies home one evening, said he had got them and sat right down and put Hattie's name on one policy and Johnny's on the other." These policies were taken out in 1870, and it is not pretended that Streiber was indebted to any one until some years thereafter.

In this connection appellants insist that the defence set up by the defendant in his answer was an assignment of these policies, and that under such an answer he cannot make this testimony available to show any other defence. We cannot see that these pleadings are as stated.

Plaintiffs allege in their bill that defendant has received and collected considerable amounts due on policies of insurance on the life of said testator by the Continental Life Insurance Company of New York. Other statements of the plaintiffs of the bill may be construed to be an allegation that such money was assets of the estate. In the interrogating part of the bill the plaintiffs simply ask whether de-

284 SUPREME COURT.

Eppinger, Russell & Co. et al., v. Canepa, Ex.—Opinion of Court.

fendant has not collected money due " on insurance policies on the life of William R. Streiber, and if so what amount, and when received, and what disposition has been made of it ?" Defendant in his answer " denies that the sums of money payable on these policies of insurance constitute assets of the estate, and avers that during the lifetime of said Streiber, and before his last illness, he assigned and transferred said policies in said complainants' bill mentioned to Hattie Barker and John Barker, and the same has been collected by their guardian and is held by him for their use and benefit." It thus appears that the responses of the answer were as broad as the allegations of the bill and the interrogatory covering the general subject. The true issue here was assets or no assets. Plaintiffs filed no exceptions to the answer, but filed their replication thereto, thus admitting its sufficiency. The simple denial that these moneys were assets and a statement setting up their payment to the guardian of these children as their property met the case. The rule in such cases is that " where the facts were put in issue and proved a defence will be allowed, although it is not distinctly raised on the pleadings." A simple allegation that certain moneys are assets is certainly answered by a denial that they are assets, and affirming that they were the property of other persons named. The allegation that the policy was payable to the insured is, under these pleadings, admitted by the defendant. The question of assets was the issue, and we do not think the defendant here, in view of the pleading of the plaintiffs, should fail simply because the mode and method in which the fact of no assets was to be proved was not elaborately set forth or an assignment was alleged, when the facts failed to show a delivery of the chose in action, but did show a declaration in writing which is something less than an assignment or gift to take effect *in presenti*.

The second ground of plaintiffs' appeal is "because the said referee found and decreed that the estate of said Streiber was entitled to a credit of eighteen hundred dollars for salary earned and due said Streiber for services rendered Eppinger, Russell & Co. for the year ending April 1st, 1874."

It appears that Streiber, prior to April, 1873, was receiving a salary of $1,800, as bookkeeper, from Eppinger, Russell & Co., plaintiffs, and the referee allowed that sum as salary for the year 1874. There is no doubt of the performance of the service, nor is it claimed that the allowance is excessive, but it is insisted that during that time Streiber was a member of the firm of Eppinger, Russell & Co., with an interest of one-sixth in the profits during the year 1873 ; that the firm sustained heavy losses for that year, and that Streiber was for that reason not entitled to the salary. The plaintiffs admit that he was entitled to a salary after that year. The question, therefore, upon which this matter depends is, was Streiber a member of the firm of Eppinger, Russell & Co. for that year. Russell, one of the plaintiffs, swears that such a relation existed. As a matter of course no relation of partnership could have existed between these parties except as the result of a "transaction or communication" between them, and therefore neither he nor any of the plaintiffs are competent under the statute (Chap. 1983, Laws) to prove a partnership relation between themselves and Streiber in a suit by them against his executor. There is no evidence in the books of the firm showing any such fact.

It can serve no good purpose to encumber this opinion with a statement of the testimony of the witnesses examined by the parties upon this subject. I have read it over and analyzed it carefully and thoroughly, and cannot say or demonstrate that the finding of the referee is wrong.

The testimony of Moody, who was a member of the firm up to 1873, and who employed Streiber originally, is that he conversed with the partners, as well as with Streiber, on the subject. He swears definitely as to the time, and from his testimony, which we cannot say is overthrown, although it is not consistent with that of plaintiffs' witnesses, it is clear that while the subject was discussed, yet there never was a consummated agreement for a copartnership. We know of no rule of law which authorizes us in this conflict to direct the master to believe plaintiffs' witnesses rather than defendant's.

The third and last exception, the overruling of which by the referee the plaintiffs make a ground of their appeal here, is the allowance to the executor of the sums paid to Mr. McDonald and James M. Baker for professional services rendered as attorneys at law to the executor. The ground upon which these charges is objected to is that where the administrator acts in such disregard of his duty as is disclosed by this record he should not have credit for counsel fees. This may be good ground for the administration of some penalty in the way of not allowing compensation to the administrator, but we cannot see why one account for moneys expended rather than another should be disallowed on that account. The amount of the charge of the attorney is certainly no standard by which the loss occasioned by neglect to follow the advice given or failure to discharge any of his duties as executor is to be measured. I do not understand that it is denied that the service was performed or that the compensation is reasonable and proper in amount. It should be allowed. McHardy vs. McHardy, 7 Fla., 317 ; 3 Williams on Executors, 6 Am. Ed., 1971, note K.

What has been said disposes of the matters involved in the appeal of plaintiffs, so far as insisted upon here. The

JUNE TERM, 1883. 287

Eppinger, Russell & Co. et al., v. Canepa, Ex.—Opinion of Court.

remaining matters to be disposed of are the exceptions of the defendant to the findings of the referee, which the referee overruled, and which are set up as grounds of appeal upon the appeal of the defendant.

The first ground of exception is that the master has charged the defendant with the rent of the real estate for the entire time since the death of testator. There is no objection made to the sum charged as rent, if he is chargeable at all. The rents of this property are a fund to which the creditors have a right to look for the payment of their debt. Gilchrist vs. Filyau and wife, 2 Fla., 97 ; Sanchez vs. Hart, 17 Fla., 507. And if the administrator neglects to discharge his duty in this respect, unquestionably, to the extent that they are necessary to meet their claims, he should be charged at the suit of the creditors. There is no pretence here that the personal property is adequate to pay the debts.

There were two houses belonging to the estate, one large the other small. The executor says he endeavored to rent the large house the first and second years after the death of the testator. Upon cross-examination he names two persons to whom he spoke on the subject. He never advertised the house for rent. He admits that the Barker family claimed the property under the will, and that with his consent they entered into possession shortly after the death of Streiber, and that he never even demanded any rent from them. The small house he rented for a portion of the time at eight dollars per month. The furniture in the large house, which was the residence of the testator, he permitted to remain, subject to the use of the Barker family. The Barker family after moving out of their house, rented it at the rate of ten dollars per month for a sufficient length of time to realize almost two hundred dollars, and it was "never empty" for a year at a time. This house thus rented

was no better than, if it was as good as, the large house be-
longing to the estate. The charge made was five dollars
per month for the large house, and to this the executor ex-
cepts. We must sustain the action of the referee here.
That the small and inferior house in the yard was rented
at eight dollars per month, and that the Barker house was
rented at ten dollars per month, and was at no time unoc-
cupied for a year, are facts which are not explained or an-
swered by the simple statement of the executor, that he en-
deavored to rent the house. The only difference here to
which the failure to rent the one house while the others
were rented can be reasonably attributed, is. the fact that
the executor permitted the family to occupy it without
rent, and the reasonable explanation of the conduct of the
executor here, looking to this entire record is, that he did
not feel that he was responsible for the rent or should col-
lect rent from the family, as the property, under the will,
went to the family. This is no legal excuse. The claim of
the family was subordinate to the creditor. He has clearly
failed to act with reference to this fact, and failed to
exercise the diligence required in the matter of the collec-
tion of these rents. Perry on Trusts, 527. The charge is
proper, but as it is for money not received, it should bear
only simple interest.

The second exception is to the charge by the master of
interest upon the sums in the hands of the executor with
annual rests from the time of reception. This is a mistake.
The master charged interest upon the yearly balances as
the rule in this State requires. He did not charge interest
upon the sums as received. The fact that the executor
permitted the funds to remain in the bank uninvested makes
no difference. Where the executor retains the money, and
it does not appear affirmatively that "no good security could
be found on which to put out the said money at interest,"

and he fails to pay it into court, pending the litigation, he is chargeable with interest. Shepard's Heirs vs. Shepard's Administrator, 19 Fla.; 341; Perry on Trusts, 3 Ed., Sec. 468, and cases cited to note 4. It enters into his yearly balances and the interest upon the balance found at the beginning of a year is to be carried into the balance struck at its close, computing interest for the next year upon the whole, no interest being computed upon the sums, when received. Sanderson vs. Sanderson's Administrators, 17 Fla., 862; Moore and Montford vs. Felkel, 7 Fla., pp. 54, 60.

The third exception is because the master has not allowed the executor any compensation for his services.

We cannot see how the executor here can expect to be paid anything when he has so signally failed to discharge his duty. The moneys of the estate which he collected he allows to remain idle, while admitted claims against the estate are bearing interest. He files no annual returns in the county court as required by law. The personal property, which is of perishable nature, he fails to dispose of. The real estate is so managed as to yield but little income. It is not even kept in as good repair and condition as when it came into his possession. The compensation of an executor is in this State regulated by statute. When he renders annual returns as required by law he is entitled to a commission on accounts collected and disbursed, and approved and allowed. He is also entitled to a fair and just compensation for his services. Shepard's Heirs vs. Shepard's Administrators, 19 Fla., pp. 331, 332. Here the executor has failed to make annual returns, and we do not think his general administration of the effects of the estate is of such character as to entitle him to compensation.

Defendant's fourth, fifth, sixth, seventh and eighth exceptions all refer to the Eppinger, Russell & Co. account.

This account has been the subject of examination by reference to the books of the firm by both the master and the referee. The referee states in his report that he has "carefully examined this account as proven, and the books from which it was taken, and it is found to be exactly in accordance with the same account in Streiber's own handwriting, in the books of Eppinger, Russell & Co." There is nothing here showing this finding to be incorrect.

The last and ninth exception is to the allowance of the accounts of Doctors Sabel and Kenworthy. These accounts as the referee finds were admitted before the master without opposition. He states that they were not objected to.

The findings of the referee in this case are therefore sustained. None of the causes specially set forth by the parties to the two appeals herein as grounds for reversal of the decree are well taken. No objection for want of parties is urged by either plaintiffs or defendant.

There is, however, manifest error in the decree herein rendered. It should not have been against the executor for the amount of the valuation of the property in his hands. The decree here should be for sale of all the effects of the estate, both real and personal, except for the moneys admitted to be on hand. This should be decreed to be brought into court, and the proceeds of the sale, as well as the moneys, should be directed to be applied to the payment of the debts according to their admitted priorities. To the extent that there are sums found due from the executor for rents which he did not collect, and for the interest on the moneys in his hands, or other sums from which he did not realize anything, but should have realized something, to that extent should the decree direct an execution to issue, to be levied of the goods and chattels of the executor, in the event such amounts are necessary to satisfy the creditors. The land, the goods and chattels, and the moneys

on hand admitted to be the property of the estate, are to be treated as assets in the hands of the executor, and applied to the claims of creditors.

There has been here no conversion or misapplication of the property proved. The Barker's are in possession as they admit simply as agents of the executor to take care of the property, and the funds the executor admits are assets and have not been converted. The prayer of the bill here is not for a personal decree as for a *devastavit*, but for a sale and application of the property, real and personal, to the claims of creditors. This is the ordinary case of a bill by creditors seeking sale of assets and application of proceeds to the payment of their debts. Story's Eq. Jur., §546 *et seq.*, to 570; Thompson *et al.*, vs. Brown, Fay *et al.*, 4 John. Chy., 619.

In framing the decree it should embody in itself the amounts due. It should not be simply for a sum to be ascertained by reference to a master's report. It should set out the amount in dollars and cents, as in the case of a judgment at law. The case cited from 4th Johnson's Chy. contains a form of decree, which, so far as applicable under our statutes, may be properly followed. Indeed, this case gives quite fully the practice in a creditor's bill to administer assets.

Insolvency is not a necessary element to give equitable jurisdiction in such cases, and therefore the discussion of the question, whether the estate is insolvent, is unnecessary.

The decree is reversed and the case will be remanded with directions to reform the decree in the respects indicated in this opinion, and for further proceedings in execution of the decree. Plaintiffs and defendant will each pay one half of the costs.