ALPHONSE LOUBAT, APPELLANT, VS. ABIGAIL A. NOURSE, APPELLEE.

1. The widow is not entitled to be endowed of real estate purchased by her deceased husband and his partner, with the partnership funds, for partnership use and convenience, and held and owned as part of the joint stock or property of the partnership, when her claim comes in conflict with that of the surviving partner, or a creditor.

2. Although such estate be conveyed to the partners, so as to vest in them a legal estate as tenants in common, yet in the absence of an express agreement, or of circumstances showing an intent that the estate is to be held for the separate use of the partners, it will be considered, in equity, as vesting

in the partners in their partnership capacity, subject to an implied trust that they shall hold it until the purposes for which it was purchased have been accomplished, and that it shall be applied, if necessary, to the payment of the partnership debts.

3. At law, upon the death of the partner, his share or interest in the realty held and owned by the firm, is cast by descent upon the heir, and he becomes tenant in common with the surviving partner; and so, at law, the widow may have dower assigned her in such share or interest; but both heir and widow will take the same estate the ancestor and husband held therein, clothed with the same trust in equity, for those who are entitled to the beneficial interest, whether surviving partners or creditors.

Appeal from a decree of the Circuit Court for Franklin County.

Appellee filed her bill of complaint against the Appellant and others, and among other things alleges, that her late husband, Hiram Nourse, in his life time, together with one Hiram W. Brooks, on the sixth day of October, in the year eighteen hundred and forty, purchased from the Trustees of the Apalachicola Land Company, Wharf-lot No. 23, in the City of Apalachicola, and received from the said Trustees a deed in fee simple for the same; that the said Hiram Nourse, being so seized in fee of the said premises, did, during the coverture of complainant, sell and convey his interest in said Wharf-lot to Lawrence O'B. Branch, by deed bearing date the ninth of December, 1843; that the said Branch, on the seventh of December, 1844, conveyed said lot to Lowel Holbrook, and that said Holbrook, on the 15th of December, 1845, conveyed the same to appellant, who holds the same and receives the rents and profits.

Appellee further alleges in her bill that she has not in any manner renounced or relinquished her dower in and to the said lot, and claims one third part of the interest of her late husband therein, with a like proportion of the rents and profits since the day of the death of her husband, which occured on the twenty-first day of August, 1850.

In his answer, the appellant admits that he is the holder in fee of said lot, and that he acquired it in the manner stated in the bill. He also admits the marriage of complainant and the death of Nourse at the time mentioned, but alleges that the said Nourse, during his life time, was engaged in a general copartnership business, as a merchant, with Hiram W. Brooks, under the style of Nourse & Brooks, and at another time in copartnership with said Hiram W. Brooks and John D. Howell, under the name and style of Nourse, Brooks & Co.; that the said lot was purchased by said Hiram Nourse and Hiram W. Brooks with the monies of the partnership, and was by them held used and enjoyed as partnership property and for partnership purposes, as joint tenants, and not tenants in common; that they improved said lot by the erection of a Wharf, at great expense, which improvement was made with the funds of the copartnership. He further alleges that the said Nourse & Brooks, and the said firm of Nourse, Brooks & Co., during the time of their copartnership, received the rents arising from said real estate as partnership funds and assets, and that the same were carried into the amount of the general partnership business, and used and employed as part of the means of the same; that said Nourse and said Brooks did not in any way receive such rents, or use or employ the same, as the individual property of either of the partners, and that although a separate account was kept on the books of the firm with each partner, yet no part of the rents arising from said real estate was credited to the individal account of either of them.

Further answering, the defendant alleges that said copartnerships of Nourse & Brooks, and of Nourse, Brooks & Co., during their continuance and up to the time of their dissolution, contracted large debts, and finally became insolvent; that at the time of their dissolution, their effects

were entirely insufficient to pay their debts; that among other debts was one due and owing to the Southern Life Insurance and Trust Company, of eight thousand dollars, which was assigned to Lawrence O'B. Branch and N. C. Robbins in trust for certain creditors of said Company; that said Branch and Robbins compromised the said claim with the said Nourse and Brooks, and as a part of the said Compromise, said Nourse & Brooks, in part payment of the sum due by them, conveyed to said Branch the Wharf-lot so held and possessed by respondent.

But one witness was examined who proves that Nourse & Brooks were commission and forwarding merchants, and that accounts were opened on their books between the wharf and the firm, the rents being carried to the credit and the cost of erection and repairs to the debit of the wharf account. The wharf properrty was paid for by notes which Nourse had against the land Company. These notes were debited to "bills payable." The style of the firm was that of Nourse & Brooks. Afterwards Howell was admitted as a partner, and it was then changed to that of Nourse, Brooks & Co. A large amount of claims was held by the Southern Life Insurance and Trust Company against Nourse and Brooks, amounting to something like fifty or sixty thousand dollars, which were assigned to Mr. Branch as trustee, who settled with Nourse & Brooks by accepting property. At the time of the settlement the property was necessary to pay the debts of the firm, and the Wharf-lot was conveyed to Mr. Branch for that purpose. Nourse and Brooks were under protest, having stopped payment. They did not discharge their debts in money. When Howell entered, there was no alteration of the business. The firm was embarrassed by Howel, who promised capital and business, but failed in all respects. The dower of Mrs. Nourse was a matter of discussion; the

parties solicited a relinquishment of her dower, but Nourse refused to exert his influence with her for that purpose. The conveyance of the lot in question was made after the dissolution of the partnesship.

The Court below decreed that dower be assigned to complainant, according to .the prayer of the bill, from which appellant prayed an appeal to this Court.

*Davis* for Appellant.

*Hawkins* for Appellee.

THOMPSON, J. :

It has been said by a distinguished jurist, and afterwards reiterated by others, that the claim of dower is highly favored in equity ; that the right which a dowress has to her dower, is not only a legal right, and so adjudged at law, but it is a moral right, and she is to be provided for and have a maintainance and sustenance out of her husband's estate to live upon ; that she is in the care of the law, and a favorite of the law. These observations have been most zealously and eloquently pressed upon the consideration of this Court by the able counsel for respondent, as landmarks and guides, and to be kept steadily in view in passing upon the questions involved in this controversy ; and certainly we can have no disposition to depart from the liberal and generous views so expressed in regard to the sex, which is in every respect so justly entitled to the favorable consideration of individuals as well as Courts, or to withhold the application of the most liberal rules of equity to the claim here presented. But we have a duty to perform, and that duty is a plain though stern one. We must separate the feelings and inclinations of the man from the office of the Judge. . The maxim of all the Courts is, *jus dicere et non jus dare ;* we are not authorized to

pronounce a new law, but to ascertain and declare what the law is. If, as has been justly remarked by Ld. Loughborough, there is a general hardship affecting a general class of cases, it is a consideration for the Legislature, not for a Court of justice. If there is a particular hardship from the peculiar circumstances of the case, nothing can be more dangerous or mischievous than, upon these particular circumstances, to deviate from a general rule of law, for *misera servitus est, ubi jus est vagum aut incertum*. See Broom's Max., 62. We must confine our discretion, in every case, within those sound limits established by the rules and principles of equity. The liberality and favor with which the claim of a dowress is regarded in a court of equity, must not be understood as extending to the subversion of a settled rule of right or property, but rather to the extension of the peculiar process and powers of the Court in ascertaining and enforcing her right, whenever it is equitable and proper it should be done ; and perhaps going to the length of enforcing discovery and relief in her favor, against a purchaser for value, who is also a favorite in this Court. Within these limits of equity, there is no disposition to regard her claim otherwise than with favor.

In the case before the Court, the property in which dower is claimed by Mrs. Nourse, is a wharf-lot in the City of Apalachicola, which, as she alleges, was owned by her said husband, and one Hiram W. Brooks, as tenants in common, and which was, in the life-time of Mr. Nourse, conveyed by them, and the title to which, by various mesne conveyances, is now vested in the appellant, Alphonse Loubat. The claim is resisted on the ground that the husband of respondent and Brooks were partners ; that the property was owned and held by them as partnership property, and was conveyed by them in satisfaction and dis-

charge of a partnership debt, they having become insolvent.

However distressing the doubts may be whether real estate, held as part of the partnership funds or stock, ought to devolve upon, or descend as real estate to, the heirs or devisees, or ought to belong as personalty to the executor or administrator, upon the death of the partner, in cases where it is not required for the payment of the joint debts, yet, so far as partners and their creditors are concerned, we are satisfied that the rule is clear and free from doubt, and that such real estate, belonging to the partnership, is, in equity, to be considered as mere personalty, and is to be governed by the general doctrines applicable to it in the latter character. Story on Part., §§ 92, 93, cases cited in the margin; also Coll. on Part., p. 117, 141, (Perkin's Ed.) The cases decided in the English Courts of Equity, as to the character of real estate held as partnership property, have mainly arisen from a contest between the heir and the personal representative, in consequence of the difference in the English law between the canons of descent and the law of distribution, and they have all turned upon the actual or presumed intention of the party, whether the real estate was to preserve its specific and legal character, or an equitable conversion into personalty was intended. When, however, the question has been as to the applicability of such real estate to the payment of the partnership debts, we do not understand that there is any conflict of judicial decision, but that the courts of equity have been consistent in holding that, for this purpose, the equitable conversion into personalty is complete; and this is founded, not upon any actual or presumed intention of the party, but upon the equities between the partners, that all the joint stock or fund shall be applied to the purposes of the partnership. *Ibid.*

In the United States, the Supreme Court of Massachusetts held, in the case of Dyer vs. Clark, that when real estate is purchased by partners, with the partnership funds, for partnership use and convenience, although it is conveyed to them in such a manner as to make them tenants in common, yet, in the absence of an express agreement, or of circumstances, showing an intent that such estate shall be held for their separate use, it will be considered and treated in equity as vesting in them in their partnership capacity, clothed with an implied trust that they should hold it until the purposes for which it was so purchased shall be accomplished, and that it shall be applied, if necessary, to the payment of the partnership debts. Upon the dissolution of the partnership, by the death of one of the partners, the survivor has an equitable lien on such real estate for his indemnity against the debts of the firm, and for securing the balance that may be due to him from the deceased partner, on settlement of the partnership accounts between them, and the widow and heirs of such deceased partner have no beneficial interest in such real estate, nor in the rents received therefrom, after his death, until the surviving partner is so indemnified. 5 Metc. R., 562 ; see also to the same effect, Howard vs. Priest, 5 Metc. R., 582, 585 ; Burnside vs. Merrick, 4 Metc. R., 527 ; Sigourney vs. Munn, 7 Conn. R., 11 ; Pierce vs. Trigg, 10 Leigh R., 406 ; Winslow vs. Chiffelle, 1 Harper Eq. R., 25 ; Divine vs. Mitchum, 4 B. Monr. R., 489 ; 1 Sumn. R., 180, 181. There is some diversity in the decisions of the American Courts upon the point, but the current of decisions may very certainly be considered as in accordance with the doctrine laid down in Dyer vs. Clark, above quoted; and which, in our opinion, is in strict conformity with the principles of equity and justice.

The cases of Thornton vs. Dixon, (3 Bro. c. c., 166,) Bell

vs. Phynn, (7 Vesey R., 453,) and Balmain vs. Shore, (9 Vesey, 500,) cited and relied upon by counsel for respondent, do not conflict with the rule thus laid down. The rights of creditors of the partnership were not involved in any of them. Indeed, in the case of Bell vs. Phynn, Sir Wm. Grant, M. R., puts his doubt whether the consequence of the estate being partnership property was a conversion, on the ground that there was no occasion to call for it for any of the purposes of the partnership, but that it remained clear. And so the case of Smith vs. Smith, (5 Vesey R., 190,) is upon its own peculiar circumstances. The estate in that case, though purchased with partnership funds, was conveyed to one of the partners, under a specific agreement that it should be his, and he, be a debtor for the money, and therefore the claim off the widow for dower therein was allowed. It was argued that the rule was established in England because the partners held in joint tenancy, and therefore could have no application here, where the distinguishing property of that estate, the jus accrescendi had been abolished by our statute; but it will be seen from a reference to the authorities that this is founded in a mistake, for though conveyances of real estate to partners, in England, are generally to hold as tenants in common, yet that if it be conveyed to them as joint tenants expressly, in equity there will be no survivorship in such property, notwithstanding the form of the conveyance and the rule of law. In all cases the legal estate descends to the heir and he becomes tenant in common with the survivor; but equity, regarding the substance rather than the form, declares that he holds subject to a trust in favor of the surviving partner, for the application of the joint property to the purposes and uses of the partnership.

Recurring now to the facts of this case, the question is whether it is within the rule. It appears that Nourse &

Brooks were in partnership together, and were engaged in business in the city of Apalachicola, as commission and forwarding merchants ; that they entered into a contract with the Apalachicola Land Company for the purchase of the Wharf-lot in question, went into possession thereof, erected a Wharf, the cost of which erection, and the subsequent repairs thereof, together with all the income and profiits arising therefrom, were regularly entered on the books of the firm, to the account of the Wharf; and the firm becoming embarrassed and insolvent, discharged a debt due the Southern Life Insurance and Trust Company, of upwards of six thousand dollars, by the conveyance of this property to Mr. Branch, the assignee or trustee of said creditor. It further appears from the evidence, that the Apalachicola Land Company, being indebted to Nourse, one of the partners, and the husband of respondent, the debt due the Company for the purchase of the Wharf-lot was discharged, either in whole or in part, by using the notes or debts due Nourse, and a conveyance in fee was made to the two partners, in conformity with the previous contract. Upon these facts it is denied that the property was bought with the funds of the partnership, but with the private funds of Nourse, having been paid for with the debt which he held against the Land Company. The firm might have preferred to use the debt, and pay the money to the partner, or it may have been a loan of the debt by Nourse to the firm, for which he was to have credit, and did receive such credit, upon the partnership books, and this would seem to be the true state of the case from the statement that the notes were charged to the account of " bills payable" on the books of the firm. The testimony is evidently not as full and perfect as it might have been, but we must infer from the statement, that the notes received from Nourse were charged to bills payable and credit-

ed to Nourse, thus cancelling so much of the former account as represented the notes given for the purchase money of the wharf-lot, and placing the same to the credit of Nourse. At all events, he accepted a conveyance from the Land Company to himself and partner, in conformity with the original contract of purchase, and the rents and profits of the wharf were carried into the accounts of the partnership as part of its assets. All this is wholly inconsistent with any pretence of a sale or exclusive ownership, or indeed any claim of right adversely to the partnership, and indeed it does not appear that any such was ever asserted by him in his life-time. Nor is there sufficient evidence from which a resulting trust can be raised in favor of Nourse individually.

It is also contended upon the evidence, that because the conveyance is to the partners as tenants in common, although the property was paid for out of the joint fund, yet it would be, in effect, a division of the joint-stock *pro tanto*, and therefore not partnership property, and Goodwin vs. Richardson, 11 Mass. R., 469, is cited in support of the position. It will be a sufficient answer to this case to quote the remarks of Shaw, C. J., in relation thereto, made in Dyer vs. Clark, before cited. " The Court," says the learned Judge, " were dealing solely with a question of law " in determining a legal estate, and intimate that a court of " equity might make joint real estate applicable as person- " al to the payment of partnership debts ;" and he does not consider the decision as opposed to the conclusion of the Court in the said case of Dyer vs. Clark, on the equitable principles there laid down.

And so it is contended that the property not being absolutely necessary for the partnership purposes, but only used incidentally in the prosecution of their business, the consequences of the rule do not flow therefrom. We are

not aware of any such limitation. The rule applies whenever the joint funds have been applied in the purchase for the use or convenience of the partnership, and there is no express agreement that the property shall be the individual property of the partners, each standing as a debtor to the joint fund for the cost, but it remains as part of the joint stock or fund, whether absolutely necessary to carry on the business or purposes of the partnership or not. We do not attach any importance in this case to the fact of the admission of Howell into the partnership, subsequent to the acquisition of the property ; or that the debt, to discharge which it was conveyed, was contracted after he came into the concern. The witness who was examined says that Howell was admitted as a partner in the firm on his promise to bring money and business, and that no change was made except in the style of the firm, to that of Nourse, Brooks & Co. No settlement of the previous business took place, and the same books of account were continued. Now, although Howell may have failed in the performance of his promise to bring money and business to the concern, as it is stated he did fail, and while it might furnish a ground for the senior partners to rescind their agreement, yet having been admitted as such partner, during the time he continued a member of the firm, the real estate standing in the names of the two senior partners, became subject to a trust for the new partnership, consisting of themselves and the incoming partner. It is never necessary that the conveyance should be taken in the names of all the partners. It is sufficient if it be in the name of one, or more, or in the name of a stranger. Hoxie vs. Carr, 1 Sumn. R., 173, 182, 183.

The facts of this case bring it within the equitable rule before laid down. The Wharf-lot was purchased, and the Wharf erected thereon, out of the joint or partnership

45

funds; it was held and owned as joint property, for the use and convenience of the partnership, the partnership alone having the perception of the rents and profits issuing therefrom; and therefore the application of it to partnership purposes, such as the satisfaction of creditors, against the dower of the widows of the partners and the claims of the heirs at law, is clear beyond a doubt.

The remaining point to be considered is as to the effect of the act of November 7, 1828, entitled an act concerning dower, (Thomp. Dig.,) which provides that when one dies intestate, or testate, without making provision for the wife which shall be satisfactory to her, she shall be entitled to be endowed of " one third part of all the lands, tenements " and hereditaments of which her husband died seized and " possessed, or had before conveyed, whereof said widow " had not relinquished her right of dower, as heretofore " provided by law, which third part shall be and enure to " her proper use and behoof, in and during the term of her " natural life." This act is in affirmance of the common law, and indeed, from the use of the terms "*as heretofore provided by law*," it is evident the Legislature designed to exclude the idea of any new law, or to make any change in the quality or quantity of interest which a dowress would take in the estate of her deceased husband. As a statute, we do not think it has any greater effect upon the equitable rule laid down herein, than it had standing as a rule of common law. She is to be endowed as theretofore provided by law, and no new right or interest is created. In other words, the old law is simply re-enacted.

But we are not dealing with a question at law in determining a legal estate. We are deciding how far a Court of Equity will control a legal estate for the purpose of doing equity. As upon the death of one member of a partnership, his share or interest in the real estate held and own-

ed by the partnership, as a part of the joint stock or fund, is, at and by the strict rule of law, cast by descent upon the heirs at law, and such heir at law becomes tenant in common of such property with the surviving partner, so the widow of a deceased partner may at law be endowed of one third of his interest; yet in both cases, though seized at law, they will hold the lands precisely as the ancestor and husband held them, clothed with the same trust, and they will, in a Court of Equity, be deemed to be trustees for those who, in equity and conscience, are entitled to the beneficial interest—the surviving partner, or creditors, or both. And such must be the case here. If Mrs. Nourse had preferred her claim at law, and dower had been assigned her, a Court of Equity, on the complaint of the parties beneficially interested, would cause her to execute the trust. But she having sought the aid of a Court of Equity to enforce a supposed legal right to dower, although she may have had that right, yet the Court, finding it subject to a trust for the surviving partners or creditors of the partnership, and finding also that the property has in fact been used and applied to the purposes of the trust, namely, the satisfaction of a partnership debt, her application must be denied. The creditor took the property conveyed, in the consideration of a Court of Equity, free from claim of dower.

The conclusions we have arrived at, show that the Court below erred in the decree rendered in this cause on the 9th February, 1852, and the same should be and is hereby reversed and set aside; and proceeding to render such decree as the Court below should have rendered, we order and decree that the respondent's bill of complaint, as against the appellants, and seeking to be endowed of the Wharf-lot mentioned in the proceedings, be and the same is hereby dismissed, with all costs.

*Per totam Curiam.*　Decree reversed and bill dismissed, so far as it seeks dower of the Wharf-lot.