JOSEPH RIVAS, APPELLANT, VS. OWEN J. H. SUMMERS, APPELLEE.

1. A proceeding for the partition of lands under the statute, is not at law but in chancery, and was not intended as a substitute for or equivalent of an action of ejectment, or to be used for the sole purpose of testing a legal title or trying an issue as to the same. *Street et al. vs. Benner et al.*, 20 *Fla.*, 700, *reviewed and distinguished.*

2. In a proceeding for a partition of land the defendant not only remained silent as to any right to a trial of the title at law, but after the testimony had been taken before an examiner the cause was tried by a referee appointed by the chancellor on the application of the parties plaintiff and defendant for such

reference: *Held,* That by such reference and trial the defendant waived any constitutional right he might have had to a trial of the question of title by a jury.

3. A defendant in a suit in equity, under the statute, for partition of land, died leaving a will and appointing his co-defendant and partner, J. R., his executor. By the will the testator gave to J. R. all his personal and real estate to be held in trust for the benefit of J. R's. children, the will stating it to be the testator's wish and request that J. R. should continue the partnership business and have the sole and exclusive use and control of all testator's interest in the business, both real and personal, until the children should arrive at the age of twenty-one years, and that then J. R. should either pay over to each of the said children their proportion of testator's estate, both real and personal, or should hold or invest the same for their exclusive benefit until he should deem it safe and for their interest. After such death the cause was revived against the executor and proceeded against J. R., in his own right and as executor. The record did not show that the land was partnership assets: *Held,* That on the death of the testator the children and devisees became necessary parties for the purposes of partition, and the executor was not a sufficient party as the representative of their interests.

*Fleming & Daniel, Chas. S. Adams* and *A. W. Cockrell & Son,* for Appellant.

*W. B. Young* for Appellee.

### BRIEF FOR APPELLEE.

This was a bill filed by appellee against appellants for partition and account of the rents and profits. There was a decree in favor of appellee, a petition for rehearing which was denied. The defense was that the defendants owned the entire property in fee simple by virtue of a deed of conveyance made by a commissioner on a sale ordered by the probate court. There are fifteen assignments of error.

The 8th assignment of error raises the question as to whether or not chancery has jurisdiction to try the ti-

tle and decree partition where an adverse title or claim is set up by defendants who are in exclusive possession. As a decision on this point adverse to appellee will dispose of the case, I will consider that first.

The statute in this State authorizes any tenant in common to file a bill against his co-tenant or others interested in the land. McClellan's Digest p. 801 § 2. The act requires the court upon the coming in of the answer to ascertain and adjudicate the rights and interests of the parties upon the pleadings and proofs, and to decree partition if it shall appear that the parties are entitled to the same. McClellan, p. 803 § 5.

If the legislature had stopped with authorizing the bill to be filed against a co-tenant or a co-parcener, then the position of appellants would be correct and the bill would have to be dismissed; but the legislature did not stop here, but authorized the bill to be filed against *others* interested in the land. What did the legislature mean by authorizing the bill to be filed against others and requiring the court to adjudicate the rights and interests of the parties ? Unless the lawmakers intended to allow the owner of an undivided interest in land in the adverse possession of another to maintain a bill for partition there was no necessity for the statute. The court of chancery had jurisdiction, independent of the statute, of partition of real estate held by joint tenants, tenants in common and co-parceners. Story's Eq., 3rd ed., § 646. Without the statute the appellee would have been compelled to bring an action of ejectment to recover his undivided interest and then have instituted proceedings for a partition. The purpose of the legislature was to correct this evil, and make one suit dispose of the entire matter. The chancery court in this State has jurisdiction to try the title to land in a suit for partition. This

seems to be the opinion of this court in so far as the question has been before and been considered by it. Street vs. Benner, 20 Fla., 700; Kiel vs. West, 21 Fla., 508.

The objection, not made till after final decree in the court below, but made for the first time in the petition for rehearing, that the bill is in effect an action of ejectment (inasmuch as the complainant neither had actual or constructive possession of the land, all of which was held adversely by appellants) however effective it might have been had it been made in a proper manner before final decree, is not available after final decree. It was waived by appellant. Black vs. Washington, *et al.*, 3 So. R., 140 (Sup. Ct. Miss., 1889) Sammis vs. L'Engle, 19 Fla., 800. It is apparent from the record that the solicitors who represented the appellants prior to the final decree thought that the court had the right under the statute to try the cause.

The 1st, 2nd, 4th, 5th, 6th and 7th assignments raise another question which if decided against appellee will be conclusive of the case; that is the validity of the probate proceedings under which appellants claim title. If these proceedings were invalid and did not divest the title of the devisees of Summers, then it can not be questioned that appellee owned an undivided interest in the lot sought to be partitioned, and if the views heretofore expressed as to the jurisdiction of the chancery court under the statute are correct, he can maintain his bill.

The proceedings in the probate court under which appellants claim title were invalid for two reasons.

1st. The record of the proceedings do not show affirmatively that the court had jurisdiction. The averment in the petition sworn to by the administrator of

existence of indebtedness stating the same and the *facts* which authorize a sale is jurisdictional, and if not set forth in the petition the proceedings are *coram non judice* and void. Wyatts vs. Rawls, 29 Ala., 510, 517; Bishop's Heirs vs. Hampton, 15 Ala., 761; Taliaferro, Admr., vs. Barrett, 3 Ala., 674; Fitch vs. Miller, 20 Cal., 352; Haynes vs. Meeks, 20 Cal., 288; Freeman on Void Judicial Sales, § 11.

No such petition was filed for the sale of the land in question as the statute requires, sec. 4, Chap. 1732, p. 14.

The statute also requires the filing of a schedule and the schedule filed does not comply with the statute, sec. 4, Chap. 1732. This was the act in force when the petition was filed and the proceedings had.

The petition itself must set forth the jurisdictional facts and can not be aided by the schedule even if a sufficient schedule had been filed. Gregory vs. Tabor, 19 Cal., 397.

2d. When a power of sale is given in a bill the statute directs that the sale shall be made by the executor or the administrator with the will annexed, and only authorizes a sale by the order of court when the will gives no power of sale of realty for the payment of debts. Sec. 3, Chap. 1732. The petition in this case discloses the existence of a will and does not aver that it gave no power of sale. Wilson vs. Holt, 3 Am. State Rep., 771, (83 Ala., 528.)

The will in this case gave a power of sale. Lindlay vs. O'Riley, 7 Am. State Rep., 302, (50 N. J. Law 636, 646), Bannin vs. Jacobus, 17 N. J. Eq., 153; Going vs. Emory, 16 Rich., 107, 112.

The sale under the order of court where the will gave power of sale was void, the statute conferring no

authority, no jurisdiction on the probate court where the will gives the power. Wilson vs. Holt, *supra.*

The record of the probate court must show affirmatively that the court had jurisdiction to decree a sale or the sale was void and can not be validated, and the title of the appellee to an undivided interest in the land sold was not thereby divested. Freeman on Void Judicial Sales, § 58 *et seq.*, and authorities before cited.

The 3d assignment of error is that the court below erred in considering the certified copies of the power of attorney and deed from Hildebrand and wife as evidence. A certified copy of a deed is not admissible in evidence, if objected to, unless the proper predicate is laid for its introduction. Neither of the solicitors representing the several parties at present represented them when the testimony was taken.

The objection that these copies were secondary evidence and that the proper predicate for their introduction, to-wit: "that the originals were not in the custody or control of the party affirming the copies," was made for the first time in the petition for a re-hearing. The record shows that the complainant was present in person before the examiner and was examined as a witness, and it is fair to presume that this objection was waived, it certainly was not made, or the proper predicate would have been laid. The objection not having been raised when the opposite party might have had an opportunity to remove the objection, the proof will be regarded as waived, on the presumption of the existence of the fact though not proved. Bush vs. Adams, 6 South. Rep., 860.

These deeds were objected to on a different ground and the objection was not well taken. (See Transcript p. 91).

An objection to evidence that it is "incompetent, immaterial and irrelevant" is not sufficient to present any question on appeal. Stringer vs. Frost, 2 L. R. A, 614; Bunder vs. Cunningham, 107 Ind., 360; Chapman vs. More, 107 Ind., 223; Ohio & M. Ry. Co. vs. Walker, 113 Ind., 196; Knox vs. Higley, 76 Cal., 264.

An objection to evidence as incompetent must state the reasons which make it incompetent. Helena vs. Alberton, 8 Mont., 499; Masonic Trust Ben. Soc. vs. Lackland, 97 Mo., 137.

The presumption is that the objection was abandoned as it does not appear that it was insisted upon by the party making it or that the court below decided the point made by it before final decree. It is the business of the party making an objection to evidence taken before the examiner, to call it up for decision at the proper time, and if he neglects to do so the other party is not prejudiced by such neglect. Robinson vs. Hartridge, 13 Fla., 501.

The 9th error assigned is the denying the petition for rehearing; as the petition of appeal assigns as errors the same matters which were set out as grounds for a rehearing, I shall not consider this assignment of error.

The 10th error assigned is admitting the will of Koopman in evidence. As the question of the parties in interest not being before the court was raised first on the application for rehearing it was proper for the court to admit the will of Koopman to see if there were devisees who were necessary parties.

The 11th error assigned is that the executor of Koopman was not a proper party. I insist that he was not only a proper party but a necessary party.

·.The bill alleged that the defendants, one of whom ːKoopman died pending the suit, had received the rents ⸴and profits of the land to the exclusion of the complainant for a number of years and prayed an account of the same and to such a bill the executor was a necessary party. This court has held that under the statutes of this State the executor is entitled to possession of whatever interest in the land his testator had, pending administration. Hence he is a necessary party. If there was anything in this objection it was waived by defendant submitting to a hearing of the case on the merits without raising it. Sammis vs. L'Engle, 19 Fla., 800.

The 12th error assigned is that all the parties in ˙interest are not parties to this suit; all necessary parties are before the court. The lot in question is part ˙ of the partnership assets of the late firm of Rivas and ˙Koopman and the surviving partner was a party defendant. The will of Koopman vested all his interest in his executor as trustee with power to sell and convey in fee, change investments, etc., finally, when in ˙his judgment it was proper to do so, to divide the ˙ estate of the testator among certain named persons. ˙Under the large and discretionary power given the executor it cannot be said that the cestui que trust have ˙any particular interest which the court could set off to them or any one of them and the executor was the only necessary party. No objection that the suit was defective for want of parties was made before final hearing. The objection cannot therefore avail these defendants on appeal. Chancery Rule 34.

But I go further than this, I insist that under the ⸴laws of this State the executor is the only necessary ⸲party to a suit concerning the lands of his testator. ˙The statute in this State reads, "real estate shall be

considered assets in the hands of executors and ad-
ministrators." The word assets had a well defined
meaning in the law when this act was passed and we
are bound to presume that the Legislature knew the
legal meaning of the word. Assets in the legal sense
when used in connection with and reference to the es-
tate of a deceased person means the personal property
of a decedent which vests in an executor by virtue of
his office. Ab. Law Dic.; Eng. & Am. Enc. of Law,
Vol. 1, p. 825; Bouvier's Law Dic.; Blackstone, Book
2 m. p. 510.

Assets vested in the executor or administrator and
he alone was the proper party to sue or be sued in re-
lation thereto, "being the representative of the de-
ceased and having the same property in his goods as
the principal had when living and the same remedies
to recover them." Blackstone, Book 2 m. p. 510.
When the Legislature enacted that "real estate shall
be considered assets in the hands of executors and ad-
ministrators," they gave to executors the same rights,
title, and power, in, to, and over the real estate as they
formerly had over personalty, save and except as lim-
ited in the act.

This court has held that the personal representative
is the proper party to maintain ejectment though un-
der our statute the title is involved and the verdict of
the jury must specify the estate recovered. But in
Whitlock vs. Willard, 18 Fla., this court holds that
the personal representative cannot, under the lan-
guage of the statute maintain a suit for partition.
While I do not think that the legal principles an-
nounced in that case conflict with the position I take
in this case "that the executor is the only necessary
party," yet I do not consider that the language of the
Alabama court cited and approved in that case a cor-

rect statement of the law in this State. The Alabama statute differs materially from our statute. §2252 (1888) Revised Code of Alabama says: "The real estate of persons dying intestate descends, subject to the payment of debts, the charges against the estate and the widow's dower as follows :"

§2429 (2060) says: "The whole property of the decedent is charged with the payment of his debts, and the same must be sold for that purpose if necessary."

§2446 (2076) says: "Administrators and executors may rent the lands of decedents and the *proceeds* thereof are *assets*."

Preceding sections provide the mode and method of obtaining orders for sale of personal property and subsequent sections provide for sales of land.

It will be seen that the legislature of that state while making rents received by the personal representative *assets* have been careful not to apply that word to the land, and the statute expressly says that it descends to the heirs subject to being charged with the debts. This is widely different from the Florida statute.

The Michigan statute reads: "When any person die seized of lands, tenements, hereditaments or of any right thereto, or entitled to any interest therein in fee simple or for the life of another, not having lawfully devised the same, they shall descend subject to his debts in manner following :" Story's Legal Dgst. p. 354. This is almost the identical language of the Ala. statute and the decision of the Supreme Court of Michigan cited in Whitlock vs. Willard is not more applicable to our statute than the Ala. decisions.

In 1829 the Legislature of the Territory of Florida passed an act entitled "An Act regulating descents." The first section reads: "That whenever any person having title to real estate of inheritance shall die in-

testate as to such estate it shall descend in parcenary to the male and female kindred in the following courses." There is not one word in the act about executors, administrators or debts. See Acts 1829 p. 99.

In 1833 the Legislature passed the act making real estate assets in the hands of executors or administrators. I contend that the last named act vested the real estate of a decedent in his personal representative in like manner and to the same extent as the personal property, called by the Common Law, assets, vests in him. In the language of Blackstone before cited: "'Being the representative of the deceased and having the same property in his hands (made assets) as the principal had when living and the same remedies to recover them."

To the 13th error assigned I say that without express agreement one tenant in common cannot charge his co-tenant on account of buildings or improvements placed upon the land by him. Thurston vs. Dickinson, 2 Rich. Eq. 317, (Am. Dec. 353); Taylor vs. Baldwin 10 Barb., 582.

The 14th error assigned is answered by what has been said in regard to other errors assigned. If the sale under the probate proceedings was void the complainant undoubtedly had an undivided interest in the property, and if the court had jurisdiction of a case of this kind, it did not err in not dismissing the bill, even though the proof as to the question of interest held by complainant was not as clear as it might be made. Though the burden of proof is upon a party, if the evidence upon a point is insufficient and there can be no doubt that sufficient testimony exists the court will order further testimony to be taken. Fuller vs. Fuller, 23 Fla., 254.

The proof as to the interest of complainant is not so clear as it might have been made. It does show that complainant's father left his entire estate, the lot in controversy being a part thereof, to be divided between his five children and their mother, that one of the children had quitclaimed her interest to the others and that the mother had died. All this before the filing of the petition for sale of land. Thus the entire property became vested in four persons of whom the complainant was one.

It is apparent from the record that the able solicitors who represented the defendants up to the filing of the petition for rehearing thought that the court had jurisdiction under the statute of the case, and that if complainant had any interest it was the amount claimed, but they relied upon the validity of the probate sale and the statute of 1879.

The act of 1879, Ch. 3134 p. 75, does not and was not intended to apply to a void sale. No irregularity in the proceedings or in the deed would make the sale void. If the court once acquired jurisdiction the greatest irregularity in the subsequent proceedings would not render the sale void, but only voidable by proper proceedings instituted in due time. The Legislature confined the operation of the act, by its very terms, to irregularities in the proceedings or in the conveyances, things to occur after the court had acquired jurisdiction. Now in this case we do not say that there were any irregularities in the proceedings or in the conveyance, but we do say for reasons heretofore given, that the court never acquired or had any jurisdiction and that the proceedings were *coram non judice* and void.

The court must have had jurisdiction to decree a sale or the sale was void and cannot be validated. Freeman on Void Judicial Sales, §58 *et seq.*

The maxim, "Caveat emptor," applies to Judicial Sales. Webster vs. Hayworth, 8 Cal., 21.

The purchaser has no lien for purchase money. Frost vs. Atwood, 41 N. W. 96.

Appeal from the Circuit Court for Duval county.

### STATEMENT.

The bill was filed December 28th, 1886, by the appellee, and as amended, Joseph Rivas and Henry Koopman being defendants, shows that Charles Summers, late of Duval county, died testate October 22nd, 1862, and solvent, leaving a large estate, and naming his widow as executrix, and that the will was admitted to probate in Duval county, and she qualified as executrix. The will is annexed to the bill as a part thereof, and from it we see that it directed that all the testator's debts be paid as soon as possible after his decease out of the first moneys that should come into the hands of his executrix, thereinafter named, from any portion of his estate real or personal. It gives and bequeaths unto his wife and children Charles H., Mary S., Francis V., Michael T. and Owen J. all his estate of every kind whatsoever, the proceeds and income of which to be devoted to the support and maintenance of his wife, and for the support and maintenance and education of his children, and he commits and disposes unto his wife, reposing special confidence in her, the custody, tuition, care and education of his children from his decease until they shall respectively attain the age of twenty-one years, and then directs that the portion of his property remaining from their support

and education be given to each on attaining majority as shall be meet and proper in the discretion of his beloved wife. Expressing a desire that there shall be no letters of administration taken out on his estate, but that the sole control and management of the same shall be and remain in the hands of his wife, and direct- ing that if any question or controversy shall arise concerning any gift, bequest or other matter or thing in his will given or bequeathd, expressed or contained, it shall be settled by referees to be selected by his wife; they to have power to choose an umpire, the will then reads: "I further will that should it be deemed nec- essary or expedient by my executrix hereinafter named to sell and dispose of any portion or the whole of my real or personal estate for the purpose of the support and maintenance of herself, or the support, mainten- ance and education of my said children, to effectuate my intention I do hereby vest in my said executrix full power and authority to dispose of my real estate in fee simple and my slaves and personal property in as full and large a manner in every respect as I could myself do if living, hereby directing my executrix to retain in her hands the whole proceeds of such sale, to be disposed of as I have before ordered and willed." The bill also states that the executrix after entering on her duties died, but previous to her death she duly filed an account of her doings as such. This report with the vouchers therein referred to are made a part of the bill, and is alleged to show a balance due the estate. The vouchers are not in the record. The ac- count was filed in the county court June 1st, 1869, and runs from 1862 into December, 1868, the amount received being $5,565, and the amount paid out being $5,484.48, and the balance due the estate $80.64. No action appears to have been taken on it by the

county court except to file and record it. The bill then alleges that the complainant is the son and one of the heirs of the testator, and was born March 22nd, 1860; that he has an indefeasible title in fee simple to an undivided two-eighths part or share of the eastern half of Lot 1, in Block 21, in the city of Jacksonville, according to the I. D. Hart map, such property lying on the north of Bay street with a frontage thereon of 50 feet, and running back 105 feet, and that the testator died siezed and possessed of the same; and that to the best of complainant's knowledge and belief, Joseph Rivas and Henry Koopman, the defendants, are each a co-tenant with him in the ownership of said property, and each holds an undivided three-eighths interest therein, and that they are his co-tenants, and have, as such, received and applied to their own use the rents and profits of the property to the exclusion of complainant's rights in the premises, they having appropriated the rents and profits arising therefrom continuously since March 3rd, 1873, the same amounting to $40,000. The prayer is that the land be partitioned and the said share of complainant be allotted to him, and the defendants required to account for his share of the profits.

The defendants, Joseph Rivas and Henry Koopman, answered; their answer and the amendment thereto admitting the death of the testator, his will and the appointment and qualification of the executrix, but averring the want of any information as to the filing of the alleged account, not admitting it was filed, or was correct, and denying that it was a final accounting; and stating that the executrix died on or about May 20th, 1870, without having closed the administration of the estate, and on about July 20th of the same year letters of administration *cum testamento annexo*

on the estate of the testator were issued to Michael Hartley who duly qualified as such administrator, a copy of which letters is annexed.

They deny that the complainant has an indefeasible title to an undivided two-eighths interest in the described land, or that he is a cotenant with them therein, or that he has any right, title or interest either in law or equity of any kind whatsoever either in or to the land or any part thereof. Defendants say that they not only own each three-eighths interest in the land, but that they each own four-eights interest in it, and that they are joint tenants, and own together the whole of the land in fee simple. That the land was sold and conveyed to them by John H. Burton, a commissioner appointed by order of the judge of the county court in and for Duval county, Florida, in probate, in the matter of the petition of Michael Hartley, administrator *de bonis non* of the estate of Charles Summers, deceased, praying a sale of the land to pay the debts of the said estate, a copy of the deed being annexed as a part of the answer. The deed bears date March 14th, 1873, and appears to have been recorded on the next day. That the petition was filed by such administrator in said court in January, 1873, and prayed the sale of the lands to pay the debts of the estate of said Charles Summers, and thereupon such proceedings were had thereon that on the 13th day of said month an order was made by the judge of said county court whereby the lands were ordered to be sold for the purpose of paying the debts of said estate, and the said Burton was appointed a commissioner to make such sale upon due and legal notice. That the commissioner in obedience to such order did publish a notice of the time and place of sale for thirty days in the Florida Union,

a newspaper published in said county, and on March 3rd, 1873, in accordance with such notice, offered the land for sale before the court-house door in the county at public auction to the highest bidder, at which time and place the land was sold and struck off to these defendants for the sum of $10,125, bid by them, and being the highest sum bid therefor, which price was a fair and full value for the property; and thereupon, a report of the sale being made by the commissioner, the said judge by an order, made March 8th, 1873, ratified and confirmed the sale and ordered the commissioner to convey the land to defendants, which was done upon the payment of the stated purchase price by the defendants by the execution of said deed by the commissioner. A certified copy of which proceedings is annexed as a part of the bill. That upon the execution of the deed to them they were let into the possession of the property, and from that time to the present have owned, occupied, possessed and held the same. claiming under said deed of conveyance the whole of said property in fee simple adversely to the complainant and all other persons whomsoever.

Further, that complainant has received his proportion of the money arising from the sale of the land, being the balance remaining over and above the amount necessary to pay the debts of the estate. That whatever power of sale of the realty of said estate may have been in the said executrix, no such power was vested in said administrator upon whose petition the land was sold as heretofore stated, which petition made a case within the jurisdiction of the county court, and the facts giving jurisdiction to the county court were by it adjudicated and determined as appears by its order based upon said petition; and the facts as set forth and adjudicated cannot now be

inquired into collaterally in these proceedings between the parties thereto. The answer concludes with the usual general denial.

Complainant filed replication, and on November 9th, 1887, the cause was referred to an examiner to take testimony, and on April 15th, 1889, the examiner filed his report of the testimony taken under such order. On June 21st, 1889, complainant filed in the office of the clerk of the Circuit Court of Duval county a notice, entitled in the cause, and dated two days previously, to Joseph Rivas, to the effect that on the 22nd of the same month he would move the court for an order reviving the cause against said Rivas, as the executor of Henry Koopman, deceased; and on the last named day complainant filed a petition stating that Koopman had died on April 20th, 1889, as would appear from an annexed certified copy of the letters testamentary issued to said Rivas on the last will and testament of Koopman; such letters purporting to have been issued by the county judge of Duval county April 24th, 1889, and such petition praying that the cause be revived against Rivas as such executor, and proceed in the same manner as if it had been instituted against such representative; and on the 22nd day of June, 1889, the Circuit Judge made an order that the cause be revived "against the said executor and be proceeded in as though the suit had been originally instituted against the said executor," the order reciting that due notice of the motion had been given. Afterwards the cause proceeded in the name of O. J. H. Summers, as complainant, and in the name of Joseph Rivas, in his own right, and Joseph Rivas, as executor of Henry Koopman, as defendants.

On November 29th, 1889, the cause was referred to R. M. Call, Esq., a practicing attorney, for trial by

him as referee; and on December 11th of the same year the referee filed his findings and judgment, of which filing due notice was given, such findings being: That the complainant is the owner in fee of an undivided one-fourth interest in the property, describing it, and that the said defendants are his cotenants, each owning an undivided three-eighths, and that the defendant Joseph Rivas, in his own right, and his testator, Henry Koopman, during his lifetime, have applied to their own use the rents, income and profits of the said land since March 15th, 1873.  And it being adjudged :  1st.  That the said parcel of land be partitioned, and one-fourth thereof set off and allotted to complainant, and appointing commissioners to make partition as herein decreed, they to take the oath and proceed according to the statute in such cases made and provided.  2nd.  That the cause be referred to a named special master to take and state an account of the rents, income and profits of the premises during the time the defendants have received the same and the complainant has been excluded from the land by his cotenants; the master, in stating the account, to charge the defendants with one-fourth of the rents, income and profits, and give them credit for one-fourth of all proper disbursements for taxes and assessments, insurance on tenements, necessary repairs; interest to be allowed on each item on each side of the account from the date thereof to the date of the report.   There was a provision as to costs, which it is not necessary to mention.

In the proceedings had before the examiner there is an entry made December 2nd, 1887, to the effect that the counsel for complainant and defendants agreed on that day that if the court should decree a partition of the property sought to be partitioned, then, upon such

decree, testimony might be subsequently taken as to the rents and profits of the property, subject to all proper and legal objections thereto, and in accordance with the prayer of the bill for an accounting.

On December 16th, 1889, Rivas in his own right, and as such executor, filed a petition praying that the decree be opened and for a rehearing, fifteen grounds therefor being set forth in the petition; and on January 6th, 1890, the referee filed his findings and judgment thereon as followed: It recites that the cause came on to be heard on December 31st, 1889, upon the petition; that complainant appeared by his solicitor, Wm. B. Young, and the defendant by his solicitors, Fleming & Daniel, by S. C. Adams, and A. W. Cockrell & Son. That complainant offered in evidence the certified copy of the last will and testament of Henry Koopman, deceased, and the probate thereof, certified by the county judge of Duval county, to meet the objection of want of proper parties raised for the first time by the petition; and that the defendant objected to the introduction of the same on the ground that it was not the proper time for the introduction of evidence, the testimony having been closed, and on the further ground that no predicate had been laid for its introduction. The paper, findings and judgment, then reads as follows: The will is admitted in evidence. Whereupon it is agreed by counsel for both parties that two of the children of Joseph Rivas, referred to in the will of Henry Koopman, to-wit: Joseph M. Rivas and Henry Lee Rivas, are of full age. The said petition was argued by counsel for complainant and defendant, and after due consideration the referee holds that there is no reason to open the decree herein, dated 7th day of December, A. D. 1889, and then fol-

lows an order denying the petition; such order bearing date January 4th, 1890.

The other facts, in so far as they need be stated, are ·set forth in the opinion.

RANEY, C. J.:

The sufficiency of the bill was not questioned in the Circuit Court, but the bill was answered, and upon replication being filed, testimony was taken by an examiner, and then there was a trial by referee, a decree in favor of complainant being reached without any objection being made to chancery as the forum; nor is the sufficiency of the bill, standing alone, brought in issue here; on the contrary, it is charged to have been so framed for the purpose of precluding any such controversy. The contention, however, of counsel for appellant is that the facts presented by the answer and developed by the testimony show such a case as is exclusively for the adjudication of the title by a court of law, and ousts the jurisdiction of equity. The defense made by the answer is, in short, a denial that complainant has any interest in the property or any cotenancy therein with the defendant; and a title to the entire property acquired by defendant at a sale made in March, 1873, under an order of the county court of Duval county, applied for by an administrator *de bonis non cum testamento annexo* on the ancestor's estate, for the payment of debts of the estate, and an entry into possession under such title, and a retention of possession, from then until the commencement of the suit, adversely to the complainant and all persons; it being further alleged that the price bid and paid by them for the property was its fair value, and that the complainant received his share of the money

remaining over and above the amount necessary to pay the debts of the estate.

Our statute (Sections 2, 5, pp. 801–3 McClellan's Digest) provides (Section 2) that the bill or petition may be filed by any one or more of several joint tenants, tenants in common, or coparceners against their cotenants, coparceners or others interested in any lands to be divided, and shall set forth the description of the lands, of which partition is prayed, by metes and bounds, or other sufficient description, and shall state according to the best of the knowledge and belief of the petitioners, the names and places of residence of the several owners, joint tenants, tenants in common or coparceners, or others interested in the land, the quantity or proportionate share claimed by each, and such other matters, if any, as may be necessary to enable the court to adjudicate fully upon the rights and interests of the parties; and where the names, residence, quantity or interest or proportionate share of any of the owners or claimants of such land are unknown to the petitioners or complainants, then it shall be so stated and the suit may proceed as if such unknown persons or defendants were named in the bill or petition, and such bill or petition shall be sworn to by some one or more of the petitioners. And (Section 5) upon the bill being taken as confessed, or upon the coming in of the answers of the defendants the court shall proceed to ascertain and adjudicate the rights and interests of the parties either by a reference to a master, by a hearing upon the pleadings and proofs, or in such other way or manner as may be most convenient and according to the ordinary rules and practice of the court; and shall also decree that partition be made if it shall appear that the parties are entitled to the same; provided, however, that when

the rights and interests or proportions of the peti-
tioners are clearly established to the satisfaction of the
court, or are undisputed, and also when the rights
and interests of some of the defendants, but not all of
them, are ascertained or established to the satisfaction
of the court or are undisputed, the court may, by de-
cree, order partition to be made, and the shares, pro-
portions or interests of the complainant or complain-
ants, and such of the defendants as have established
and satisfactorily proved their respective shares, in-
terests or proportions, to be set off and allotted to
them, leaving for future adjustment by further pro-
ceedings in the same cause the rights, shares and in-
terests of the other defendants.

This statute has received the consideration of the
court in two cases : Street *et al.* vs. Benner *et al.*, 20
Fla., 700, and Keil vs. West *et al.*, 21 Fla., 508.

In the former case, decided in 1884, the bill was dis-
missed by the Circuit Court without stating its rea-
sons for so doing; and it is said in the opinion—which
concludes very properly, that such dismissal was be-
cause of the legal title attempted to be tendered by
the plea and answer—that the bare denial of complain-
ant's title by plea or answer was no obstacle to the
court's proceeding according to the ordinary practice
of courts of equity in partition and did not necessitate
a reference to a court of law to try the legal title; and
then observing that a defendant must answer the bill,
and if he sets up a title adverse to the complainants
or disputes the complainants' title, he must discover
his own title or show wherein the complainants' title
is defective, it says that the defendants, Benner, *et al.*,
merely deny complainants' title and allege adverse
possession "founded on a written instrument," but do

36

not disclose the defect in complainants' title, nor dis-cover the written conveyance under which they claim adversely to the complainants. It is then observed that the general practice in chancery as established by the books, uncontrolled by statutes, is that when the complainant's title or the cotenancy is denied, or the answer sets up an adverse holding, and the defense is substantiated by proof, to require the plaintiff to es-tablish his title at law and to retain the bill a reason-able time to enable him to do so by such an action. The court then proceeds to consider the statute, with reference to the power of the court of chancery to try and determine a contested legal title in a suit brought "for the sole purpose of effecting a partition of lands." Disposing of Mattair vs. Payne, 15 Fla., 682, by re-marking, *inter alia*, that there the statute was not re-ferred to, nor its construction required; and further, that the bill itself showed the absence of complain-ants' right and that the very nature of the proceeding contemplates a division of land among *owners* in com-mon, it is then said that where the object of a suit is to try a question of legal title the proper forum is a court of law, and where the object is a partition of lands among common owners or parties severally interested in an undivided estate a court of equity is the forum, and, unless the statute otherwise provides, the practice has generally been as stated above. Then after quoting from the act, it says of its direction to ascertain and adjudicate the rights and interests of the parties, that it is "nothing less than a direction to de-cide and decree what these respective rights are as they may appear from the law and the testimony; that there is nothing in the act requiring the court of chan-cery to ascertain what the verdict of a jury might be upon the facts, but the court must ascertain and de-

·cide the rights and interests of the parties upon the evidence before it.  *    *   That the plain meaning of the statute seems to be that all proper issues made in a suit for partition of lands shall be tried and determined by the court in which the proceeding is com menced and according to its rules, and whatever investigation is necessary to enable the court to adjudicate the rights and interests of the parties, may be conducted by it; that having the power, the court should exercise it.''

In Kiel vs. West *et al.*, decided in 1885, in discussing the allegation of the bill as to complainants' seizin in the light of the law governing the question, it was observed: That the court does not say that a bill which shows in compliance with the rule in such cases that a defendant is in possession of the premises claiming them adversely to complainants would not oust the equitable jurisdiction; but, on the contrary, as no such case was presented, it said nothing on the subject. Again, in the same case, reiterating the rule announced above as to the defendants' answer, it is said: The titles being spread upon the pleadings, if the court could see that there was no valid legal objection to complainants' title, there was then no reason why the court should not proceed to order partition. When the statement of the title showed a disputed or doubtful legal title, the court could dismiss the bill and send the complainant to law, or retain the bill till a court of law had settled the title. Following this the construction of the statute in Street *et al.* vs. Benner *et al.*, as set forth in the head-note thereto, is stated.

The meaning of the former of these decisions is, that whenever the case is properly one of partition, one whose *bona fide* object is the partition of lands among

the common owners thereof, then all controversies as
to the legal title may be settled by the chancellor un-
der our statute; but that it was not intended by the
the statute that. a proceeding under it should be used
as a substitute for or equivalent of an action of eject-
ment, or for the sole purpose of testing a legal title or
trying an issue as to it.   It is not to be lost sight of
that the proceeding under our statute is not one at
law.   The statute is merely a regulation of the pro-
ceeding in chancery, which forum had long possessed
concurrent jurisdiction with that of the law courts
over the partition of land.   The opinion in Street vs.
Benner *et al.* does attempt to mark, further than we
have indicated, the line of division between the juris-
dictions, or the point at which the chancery court will,
at least, arrest its progress and await the result of an
action at law to be promptly instituted by the com-
plainant.   It is certain, however, that the case there
was one whose facts placed it in the class where, ac-
cording to the classification made by the opinion, the
chancellor was to settle all questions as to legal title.
The complainants set up title to an undivided interest
in the land, a grant from the King of Spain to one
Delespine, and showed that they and certain others
named were heirs of Timothy Street, and of his son
Henry, and as such claimed an undivided half interest
in the land, which half interest Street had acquired by
deed from one Michael Lazarus to whom Delespine
had conveyed the same on a stated day.   Delespine
had conveyed an undivided tenth to John Drysdale in
October, 1824, and 18,454 acres to Enoch Wiswall in
December, 1827.   The grant had been confirmed by
the United States Supreme Court in 1838, and a patent
for the land embraced in the grant by survey was
issued in October, 1873, to the heirs of Delespine,

Lazarus, Wiswall and Drysdale.  The defendants de-
rived their interests by conveyance or otherwise from
Drysdale and Wiswall, and by a mortgage of June
14th, 1825, from Delespine to Bancroft & Pope, of New
York.  The above facts were all shown by the bill.
The defective nature of the answer is explained above.
There was replication to the answer and to a plea of
similar deficiency.  The bill was dismissed after there
had been an improper reference to the commissioners,
and a report by them as to the rights and interests of
the several parties, and the conclusion of this court
that such dismissal by the Circuit Court was on the
ground of the tender by defendants of the issue of a
legal title is well supported by evidences in the record
which it is unnecessary to mention.  The case is
clearly one in which, according to the statement of the
bill, there were common owners of the described
property, and the object of the complainants was to
have the undivided interest or share belonging to the
Street heirs assigned to a distinct half of the land, and
that half vested in them, and discharged of any own-
ership of the other parties.  We must admit it to be the
law of the case in Street vs. Benner, that in all future
proceedings therein the issues of fact as well as of law
as to the legal title should be settled by the chancellor;
the opinion clearly justifies such an inference by all
concerned in it; but the observation on the same point
in Keil vs. West, though not sufficient to overrule the
former case, is at least suggestive of some doubt in the
mind of the court as to what had been said in the
former case, and of a disposition to withhold further
expression on the point until circumstances should con-
strain it.   There is nothing in the pleadings that sug-
gests that the relation of common owners had never
existed between the complainants and defendants, or

that the primary interests of the defendants were such as to make their possession hostile in its incipiency to that of the complainants. These conclusions are also sustained by the results of the inquiry made by the commissioners. It is not a case in which the complainants are seeking relief against defendants whose interests have been acquired solely in hostility to complainants' interests, nor a case where one of a class of heirs who have been owners of the property is seeking relief by partition against a defendant who has entered into possession of the land under a deed purporting to convey to him the entire estate therein, and the circumstances are such that if the deed was ineffectual to convey the sole complainant's interest, it was equally ineffectual in passing the interest of the others of the same class.

In the case before us the complainant claims as heir of his father whose title the defendants assert they bought at the administrator's sale made on the application of the administrator. Filing a replication as he did, the plaintiff manifested that he was unwilling to submit the question of title to the chancellor as a mere matter of law, upon the facts presented by the pleadings, but wished to join issue upon the allegations of fact made by the answer. In so far as any issue of fact is concerned, it can not be overlooked that the right to have the same tried by a jury was waived by the defendants. In Mississippi the obtaining doctrine is that the right to relief by partition implies joint ownership between the complainant and defendant, and can be enforced only between those in actual or constructive possession, and that other claimants must establish their right by action at law (Spight vs. Waldron, 51 Miss., 356), yet in Black vs. Washington, 65 Miss., 60, 3 South. Rep., 140, where the bill sets forth

the source of title of the plaintiffs and how they derived title, and alleged that they were entitled to one-half interest, and that the defendant owned a specified interest; and the defendant answered claiming all the land by adverse possession, the decision was that the object of the bill being in effect an action of eject-ment, as the complainant had neither actual or constructive possession of the land, was waived by the silence of the appellant on the subject in the lower court. In the case before us we do not have to, nor do we go so far; for here there has not been mere silence on the question of the trial of the legal title or of any issue of fact which there might be in the record concerning the same, but we find that after the testimony had been taken before an examiner, the cause was tried by a referee on the application of the parties, plaintiff and defendant, made to the chancellor by their respective solicitors of record. After such a reference and trial none of the parties should be heard as to a denial of an alleged constitutional right to a trial by jury. By such reference and trial they waived any such right, and after having a trial in the mode preferred by them they should remain silent on the subject, at least until the decree shall be set aside for for some other cause. Carr vs. Thomas, 18 Fla., 736, 743; Sammis vs. L'Engle, 19 Fla., 800.

This conclusion brings us to the question of parties as the next one in proper order. The facts developed by the pleadings and testimony are that the common source of title, Mr. Charles Summers, died testate leaving surviving him a widow and five children: Charles H., Mary S., Francis V., Michael T. and the complainant Owen J. The will made the disposition shown by it of his property. We are not informed by the record whether or not he owned the land in question at the

time of making his will. If he did own it then, he died testate as to it; and if he did not, his children took the land as heirs and not as devisees. It is true the complainant describes himself as an heir, yet the pleading is not so definite as to justify the inference that it was intended to allege such intestacy. The bill does not explain how he became the owner of as much as two-eighths of the property. As devisee he would have taken one-sixth, and as heir originally one-fifth subject to dower if the widow did not take a child's part, or if she had taken such a part, to one-sixth. In view of her death, it may, for the purposes of this opinion, be assumed that he was entitled to a fifth as against the other children. The effect of the testimony, as construed by the complainant and the referee, is that one of the daughters, Mary, who married Mr. Hildebrandt, had, prior to her death, which occurred in 1871 or 1872, relinquished all claim to or interest in this land; and hence, if this be correct, it would be that he and the other children, Charles, Francis and Michael, each became entitled to one-fourth of the property. The testimony shows that Charles died before November 27th, 1887, leaving a wife and a son surviving him. Whether he died testate or intestate is not known. In the absence of any statement to the contrary it must be assumed that his widow and son are still living, and the same assumption is true as to Francis and Michael. The only theory upon which complainant's case, according to the pleadings and testimony, can be sustained is that the sale proceedings were ineffectual to vest the title of the testator in the defendants; or, in other words, that they were void, and consequently assailable collaterally. They must be void to be assailable in the manner sought here. If void, they were so not any less as to any other one of

the several heirs or devisees of the testator than as to the complainant, and in the absence of any statement either in the bill or upon the whole record showing how the interests of Charles, Francis and Michael became vested in the defendants, we think there is an entire deficiency of parties. If the sale, including of course the conveyance, does not cut off their interest by vesting the title in the defendants, then in the absence of any additional showing of facts barring their rights, they are part owners with the complainant of the property, and should have been made complainants with him or defendants to the bill. With them as complainants the case would have presented the spectacle of all the heirs seeking to enforce partition among themselves, when the sole defendant was in adverse possession and had been for nearly fourteen years under a title deed purporting to convey to Rivas and Koopman all the title of the complainants' immediate ancestor and devisor; and were they defendants the peculiarity of the case as one of partition among common owners would be no less palpable.

This brings us to the question of the necessity that the devisees of Mr. Koopman should have been made parties defendant on his death. After the testimony had been taken, but before the reference of the cause for trial, it appears that Henry Koopman, one of the defendants, died testate April 20th, 1889, naming the other defendant, Joseph Rivas, his executor, and the cause was revived by an order of June 22nd, 1889, against such executor, to be proceeded in as though the suit had been originally instituted against him; and afterwards the cause proceeded against Rivas in his own right and as executor of Koopman. The order reviving the cause was made on petition supported

by a copy of the letters testamentary. From a copy of the will, which was introduced into the record on the application of the complainant in proceedings instituted by the defendant for a rehearing and in which a rehearing was denied, we find that the will, which was executed March 30th, 1877, and admitted to probate, with issue of letters testamentary, on April 24th, 1889, makes the following provision as to the testator's property: "First, after my funeral expenses and all my just debts shall have been paid, I give and bequeath unto my dear, long and well-tried friend and partner in business, Joseph Rivas, all my personal property and real estate of every kind and nature that I may die possessed of, to be held by him in trust for the benefit of Joseph M. Rivas, Henry Leo Rivas and Alphonso M. Rivas, children of the above named Joseph Rivas and Emma Rivas, his wife, and it is my wish and request that the said Joseph Rivas shall continue the business now being carried on under the name and firm of Rivas & Koopman, having the sole and exclusive use and control of all my interest in said business, both real and personal, until the above named Joseph M. Rivas, Henry Leo Rivas, and Alphonso M. Rivas shall arrive at the age of twenty-one years; then the said Joseph Rivas shall either pay over to each of the said children their proportion of my estate, both real and personal, or shall hold or invest the same for their exclusive benefit until he shall deem it safe and for their interest to pay the same over to them." Then the will orders and declares that, in case of the death of said Joseph Rivas before the said children shall become of age, then the executors and administrators of the estate of said Rivas, whether appointed by him or by the court of probate, shall be required to give good and sufficient bonds to

be approved by the judge of probate to an amount of double the amount that may be coming from the estate to each of the children, and the said executor or administrator shall be required to act in the same manner and form as the said Rivas is required to do. Then it appoints said Joseph sole executor. Two of the children, Joseph and Henry, were admitted on the rehearing proceedings, to be of full age.

In our judgment such devisees became, on the death of Mr. Koopman, necessary parties for the purposes of partition. His executor was not a sufficient party for such purpose as the representative of their interests. In view of the fact that the executor was made a party defendant without the will being before the court, we conclude that the chancellor thought the executor to be rendered a sufficient party by the general nature and powers of the office of executor; still in disposing of this question we shall, for the purposes of this case, but not as a precedent, regard the will as properly before us, notwithstanding any error there may be in such assumption; and we shall pass upon the question of parties with reference to its several provisions. Generally or independent of provisions of a will endowing an executor with special interests or powers as to real property devised to others, such an executor was entitled, as the law stood at the time of Mr. Koopman's death, to the possession and control of such property as assets, and he could maintain ejectment to recover possession of the same (Sanchez vs. Hart, 17 Fla., 507; Eppinger *et al.* vs. Canepa, 20 Fla., 262), but we do not think such a trustee to be either an owner or representative of the heirs or devisees of a testator for the purpose of a partition. In such a case neither the legal title nor the beneficial interest is in him, and he can not be held to have au-

thority to stand for those who have such interests in a proceeding whose purpose is a permanent division of property among the real owners. Under the provisions of the will before us Joseph M., Henry L, and Alphonso M. Rivas became, upon the death of Henry Koopman, the beneficial and, in the eyes of a court of equity, the real owners of the interest of Mr. Koopman in the property sought to be divided. Neither the devise to the executor nor the powers conferred upon him have deprived the devisees of such ownership. Any partition of the land, so far as the interest which the bill imputes to Mr. Koopman is concerned, must be for the benefit of the devisees, and being the beneficial owners they are necessary parties to such a division. Fridenburg v. Wilson, 20 Fla., 359; Perry on Trusts, Sections 328, 873, 881; Whitlock v. Willard, 18 Fla., 156. Neither the pleadings, nor the record, show that the land in question was partnership assets or is held as such by the appellant; no such case is before us, whatever may be its rule as to parties. Loubat v. Nourse, 5 Fla., 350; Freeman on Cotenancy and Partition, Sections 111, 120, 443.

The decree must be reversed and the cause remanded for proceedings not inconsistent with this opinion. It will be so ordered.